No. 2023-1805

United States Court of Appeals
for the Federal Circuit

UNITED THERAPEUTICS CORPORATION,

*Appellant,*

v.

LIQUIDIA TECHNOLOGIES, INC.,

*Appellee,*

*Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2021-00406*

**APPELLEE'S OPPOSITION TO APPELLANT'S MOTION FOR A
TWO-WEEK EXTENSION OF TIME TO FILE REPLY BRIEF**

SANYA SUKDUANG
JONATHAN R. DAVIES
BRITTANY CAZAKOFF
COOLEY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Telephone: (202) 842-7800

*Counsel for Appellee Liquidia
Technologies, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-1805 |
| **Short Case Caption** | United Therapeutics Corporation v. Liquidia Technologies, Inc. |
| **Filing Party/Entity** | Liquidia Technologies, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/18/2023

Signature: /s/ Sanya Sukduang

Name: Sanya Sukduang

**FORM 9. Certificate of Interest**                              Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Liquidia Technologies, Inc. | | Liquidia Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| Sanya Sukduang, Cooley LLP | Erik B. Milch, Cooley LLP | Ivor R. Elrifi, Cooley LLP |
| Jonathan Davies, Cooley LLP | Deepa Kannappan, Cooley LLP | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below) ☐   No ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Appellee Liquidia Technologies, Inc. ("Liquidia") respectfully opposes Appellant United Therapeutics Corporation ("UTC")'s motion to extend the deadline to file its reply brief in this appeal. This appeal derives from a July 19, 2022 IPR Final Written Decision rendering all claims of U.S. Patent No. 10,716,793 ("'793 patent") invalid. Although the Patent Trial and Appeal Board ("PTAB") has already found the '793 patent to be invalid, the patent will continue to prevent Liquidia from obtaining final FDA approval for its YUTREPIA™ product until completion of this appeal. Further, UTC is actively exploiting the fact that this appeal has not yet been completed, by filing an entirely new patent infringement just weeks ago in which it is asserting the same '793 patent and seeking a brand new stay against Liquidia. At this Court's and UTC's suggestion, Liquidia has taken steps within its control to expedite this appeal and, under the present circumstances, it has no choice but to oppose UTC's request for further delay—which if granted, may impact the date this appeal is heard.

## I.     FACTUAL BACKGROUND

Liquidia filed a Motion to Expedite briefing in this appeal on May 22, 2023, citing a pressing need to cease any further delay of final FDA approval and market launch of Liquidia's first-of-its-kind, life-saving pulmonary hypertension drug over an invalidated patent. *See* Dkt. 10, 13. UTC opposed that motion but noted that "Liquidia is free to self-expedite its own brief[.]" Dkt. 12, 3. This Court denied

Liquidia's Motion to Expedite but also explained that "Liquidia may self-expedite by filing its response brief early." Dkt. 15, 1. The Court further granted Liquidia's Motion "to the extent that the case will be placed on the next available oral argument calendar after briefing is complete." *Id.*, 2. Thus, while the Court determined that Liquidia had not provided sufficient justification for shortening UTC's briefing schedule, UTC has presented no good cause to ***extend*** that schedule.

As suggested by both UTC and this Court, Liquidia self-expedited its response brief by filing it seven days early on September 6, 2023.[1] Dkt. 21. UTC's reply brief is due September 27, 2023. *See* Fed. R. App. P. 31(a)(1); Dkt. 23, 1. Disregarding its own advice that Liquidia may self-expedite, UTC now requests an unjustified two-week extension, based only on professional obligations and prepaid vacation travel. Dkt. 23, 1-2. UTC's request not only renders Liquidia's self-expedition futile but asks this Court to provide UTC with even more time than would be allotted had Liquidia not self-expedited.

## II.   ARGUMENT

UTC should not be permitted to further delay the schedule in this appeal and render ineffective Liquidia's efforts to self-expedite. Dkt. 12, 3; Dkt 15. This Court regularly protects the rights of the self-expediting party by denying extensions of

---

[1] Under Federal Circuit Rule 31, the original due date for Liquidia's response brief was September 13, 2023.

time. *See, e.g.*, *UATP IP, LLC v. Kangaroo LLC*, No. 2022-2047, Dkt. 18, 2 (Fed. Cir. Sept. 1, 2022) (holding "UATP may self-expedite the filing of its response brief. . . . The case will be placed on the next available oral argument calendar after briefing is complete. No extensions of time should be anticipated. . . . The motion is denied, though the parties should not anticipate extensions of time."); *Medicines Co. v. Mylan, Inc.*, Nos. 2015-1113, -1151, -1181, Dkt. 33, 2 (Fed. Cir. Jan. 6, 2015) ("Mylan's motion to expedite and for companion case treatment is denied. Appellants may file their briefs early without leave of court, thereby self-expediting the appeal. Oral argument will be scheduled for the next available argument calendar after the reply brief is filed. No extensions of time should be anticipated.").

Here, in accordance with the Court's Order, Liquidia self-expedited this appeal by filing its response brief one week early. Dkt 15. Ignoring the Court's practice, UTC's own suggestion to self-expedite, and Liquidia's diligence in doing so, UTC requests to delay its reply brief by a full two weeks to October 11, 2023. Had Liquidia not expedited its briefing, Liquidia's response brief would have been due on September 13, 2023, and UTC's reply brief would have been due on October 4, 2023. Thus, UTC seeks to delay filing its reply brief seven days beyond the date it would have been afforded but for Liquidia's efforts to expedite. UTC offers no good cause for extending the briefing schedule at all, let alone ***beyond*** the un-expedited due date.

Even more troubling is the fact that UTC is continuing to use the '793 patent as a sword against Liquidia.  On September 5, 2023, UTC filed a new Hatch-Waxman patent infringement suit against Liquidia in Delaware, asserting **only** the '793 patent, and claiming a right to an additional 30-month stay of FDA approval of YUTREPIA™.[2]  *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 1:23-cv-00975-RGA, Dkt. 1 (D. Del. Sep. 5, 2023) (Ex. 1).  Thus, despite knowing the '793 patent has been held invalid by the PTAB, UTC continues to use this invalid patent to prevent competition and impose additional costs and expenses on Liquidia.  The request for a two-week extension of time is made only to further accomplish that goal.  An expeditious decision in this appeal will likely save both parties from expending costly resources in the district court matter concerning the '793 patent.  Delay, however, can only prejudice Liquidia and the patients with pulmonary hypertension who will benefit from YUTREPIA™.

UTC's current request is the latest in the many tactics it has used to keep Liquidia's life-saving drug YUTREPIA™ off the market.  As Liquidia explained in its Motion to Expedite, the PTAB has already found the '793 patent unpatentable, but due to a district court decision on the same patent,[3] Liquidia cannot launch

---

[2] Contrary to UTC's position, UTC is not entitled to a 30-month stay of FDA approval based on the '793 patent.

[3] This Court affirmed the district Court's finding that Liquidia infringed the invalid patent, a decision for which Liquidia has sought rehearing en banc.  *United*

YUTREPIA™ until this Court affirms the PTAB's finding. Dkt. 10, 5. The PTAB found the '793 patent unpatentable over a year ago, on July 19, 2022, but since then UTC has used every mechanism to delay and prejudice Liquidia. In the underlying PTAB case, it sought a request for rehearing and precedential opinion panel review, but at the same time, it opposed any motions to expedite and sought extensions when Liquidia self-expedited in the district court appeal of the '793 patent. *See Liquidia Techs., Inc. v. United Therapeutics Corp.*, IPR2021-00406, Paper Nos. 79 (P.T.A.B. Aug. 18, 2022), 80 (P.T.A.B. Aug. 22, 2022) (Exs. 3-4); *United Therapeutics Corp. v. Liquidia Techs., Inc.*, Nos. 2022-2217, 2023-1021, Dkt. 14 (Fed. Cir. Oct. 4, 2022), Dkt. 24 (Fed. Cir. Oct. 31, 2022) (Exs. 5-6). Now, UTC's two-week extension places UTC's reply brief well into October, impacting this Court's June 16, 2023 Order (Dkt. 15) that this case would be placed on the next available oral argument date and potentially delaying oral argument by a month or even more. UTC's request should be denied. *See Genentech, Inc. v. Amgen Inc.*, No. 2019-2156, Dkt. 57 (Fed. Cir. Oct. 1, 2019) (denying extension); *see also id.*, Dkt. 38, 2 (Fed. Cir. Aug. 7, 2019).

UTC cites only professional commitments and pre-planned vacation travel as reason for delay. This is not good cause to justify delaying the appeal, especially

---

*Therapeutics Corp. v. Liquidia Techs., Inc.*, Nos. 2022-2217, 2023-1021, Dkt. 65 (Fed. Cir. Aug. 23, 2023) (Ex. 2).

given Liquidia's efforts. UTC lists a litany of commitments its counsel has before

the standard deadline imposed by this Court's rules, including various depositions,

hearings and vacation. But UTC has repeatedly demonstrated that it has ample

resources to dedicate to this case. Over the course of this case and companion cases

(and the underlying proceedings), UTC has retained over 25 attorneys to assert

related patents against Liquidia in three disparate venues, with the resources of at

least three large, national, patent litigation firms: Goodwin Proctor; McDermott,

Will, & Emery; and Foley & Lardner. It is not reasonable for UTC to argue that this

army of lawyers does not have sufficient resources to timely respond to Liquidia's

response brief. *See TransPerfect Global, Inc. v. MotionPoint Corp.*, No. 2016-1121,

Dkt. 23 (Fed. Cir. Nov. 23, 2015); *see also id.*, Dkt. 21, 2 (Fed. Cir. Nov. 12, 2015).

UTC does not even identify which of its counsel (or even which of its many law

firms) are subject to which of the laundry list of deadlines they put in their motion,[4]

why UTC cannot have one of its dozens of other counsel work on the brief instead,

or why, if all of UTC's lawyers are so busy, they have sufficient time to file a

duplicative patent lawsuit in the district court against Liquidia. It is also not clear

---

[4] UTC suggests that its undersigned counsel has a "personal pre-scheduled, prepaid vacation travel planned for September 25-September 26, 2023[,]" (Dkt. 23, 2) but provides no explanation why the host of other lawyers retained by UTC cannot prepare the reply brief. And that pre-paid vacation was known even before Liquidia expedited its briefing.

how a two-week extension fixes the problem if all the qualified attorneys at all three firms are that busy.  Given the vast resources at UTC's disposal, denying UTC's requested two-week extension of time would pose no undue hardship to UTC.

Further, all of the professional commitments and vacation travel listed by UTC in its motion were known to UTC before Liquidia filed its response brief.  For example, UTC cites depositions in UTC-NC (Dkt. 23, 1-2), but UTC has known since June that the close of fact discovery in UTC-NC is October 6, 2023, necessarily placing depositions in September and October (*see United Therapeutics Corp. v. Liquidia Techs., Inc.*, 21 CVS 4094, Dkt. 115, 1 (N.C. Super. Ct. Jun. 20, 2023) (Ex. 7).  And in that matter, it has several lawyers from yet a fourth law firm, Brooks Pierce, representing it.  Moreover, UTC's counsel would have needed to prepare its reply brief while it carried out all of these commitments whether or not Liquidia had self-expedited.  Liquidia should not be punished due to UTC counsel's inability to adequately plan for the multiple commitments known to it and which are a natural part of being attorneys at large law firms.

## III.   CONCLUSION

This appeal is the only bar to final FDA approval of Liquidia's product.  For the foregoing reasons, Liquidia opposes UTC's motion for an extension of time to file its reply brief and asks this Court to deny the request.

Dated: September 18, 2023

Respectfully submitted,

*/s/ Sanya Sukduang*
Sanya Sukduang
Jonathan R. Davies
Brittany Cazakoff
COOLEY LLP
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

*Counsel for Appellee*
*Liquidia Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d) and 32(a), (g) and has been prepared using a proportionally-spaced typeface and includes 1,756 words.

Dated:  September 18, 2023

*/s/ Sanya Sukduang*

Sanya Sukduang
COOLEY LLP

*Counsel for Appellee*
*Liquidia Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

September 18, 2023                    */s/ Sanya Sukduang*
                                     Sanya Sukduang

# LIST OF EXHIBITS

| EX. 1 | *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 1-23-cv-00975-RGA, Dkt. 1 (D. Del. Sep. 5, 2023) |
|---|---|
| EX. 2 | *United Therapeutics Corp. v. Liquidia Techs., Inc.*, Nos. 2022-2217, 2023-1021, Dkt. 65 (Fed. Cir. Aug. 23, 2023) |
| EX. 3 | *Liquidia Techs., Inc. v. United Therapeutics Corp.*, IPR2021-00406, Paper No. 79 (P.T.A.B. Aug. 18, 2022) |
| EX. 4 | *Liquidia Techs., Inc. v. United Therapeutics Corp.*, IPR2021-00406, Paper No. 80 (P.T.A.B. Aug. 22, 2022) |
| EX. 5 | *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 2022-2217, 2023-1021, Dkt. 14 (Fed. Cir. Oct. 4, 2022) |
| EX. 6 | *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 2022-2217, 2023-1021, Dkt. 24 (Fed. Cir. Oct. 31, 2022) |
| EX. 7 | *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 21 CVS 4094, Dkt. 115 (N.C. Super. Ct. Jun. 20, 2023) |

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | C.A. No. _____ |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff United Therapeutics Corporation ("UTC"), by its undersigned attorneys, for its

Complaint against Defendant Liquidia Technologies, Inc. ("Liquidia"), alleges as follows:

## NATURE OF THE ACTION

1.      This is a Hatch-Waxman action for patent infringement arising under the patent

laws of the United States, Title 35, United States Code, §§ 100, *et seq.*, and an action for declaratory

judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, involving United

States Patent No. 10,716,793 ("the '793 patent") (attached as Exhibit A hereto).  The '793 patent

is listed in the FDA's *Approved Drug Products with Therapeutic Equivalents* publication (also

known as the "Orange Book").

2.      UTC currently markets TYVASO® (treprostinil) inhalation solution, which was

first approved by the FDA in 2009, and TYVASO DPI® (treprostinil) inhalation powder, which

was approved by the FDA in 2022.  TYVASO DPI® is the first marketed dry powder formulation

of treprostinil in the United States.  Liquidia seeks approval to market YUTREPIA®, a second dry

powder formulation of treprostinil.

3.     This action arises out of Liquidia's submission of New Drug Application ("NDA") No. 213005 and an amendment thereto, filed under § 505(b)(2) of the Federal Food, Drug and Cosmetic Act and pursuant to 21 U.S.C. § 355(b)(2) ("Liquidia's § 505(b)(2) Application" or "§ 505(b)(2) Application"), submitted to the U.S. Food and Drug Administration ("FDA") and seeking approval to engage in the commercial manufacture, use, or sale of YUTREPIA® (treprostinil) for inhalation ("Proposed § 505(b)(2) Product") before expiration of the '793 patent.

4.     After a bench trial in *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:20-cv-755-RGA-JLH ("prior District of Delaware action") involving Liquidia's initial § 505(b)(2) application, the United States District Court for the District of Delaware entered judgment finding that YUTREPIA® infringes valid claims of the '793 patent. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:20-cv-755-RGA-JLH, D.I. 436 at ¶ 3 (D. Del. Sept. 9, 2022).  This action, arising out of submission of Liquidia's § 505(b)(2) Application, alleges that YUTREPIA® infringes claims of the '793 patent.

## THE PARTIES

5.     UTC is a corporation organized and existing under the laws of the State of Delaware and having a place of business at 10040 Spring Street, Silver Spring, Maryland 20910.  UTC is a biotechnology company focused on the development and commercialization of products designed to address the needs of patients with chronic and life-threatening conditions.  UTC continues to research and develop treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other orphan diseases.

6.     Upon information and belief, Liquidia is a corporation organized and existing under the laws of the State of Delaware, with a registered office at 251 Little Falls Drive, Wilmington,

Delaware 19808, and a principal place of business at 419 Davis Drive, Suite 100, Morrisville, North Carolina 27560.

### JURISDICTION AND VENUE

7.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*., and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

8.     This Court has personal jurisdiction over Liquidia because, among other things, Liquidia is a corporation organized and existing under the laws of the State of Delaware with a registered agent in the State of Delaware.  Liquidia has publicly stated its preparation for commercialization and intent to engage in commercializing Liquidia's Proposed § 505(b)(2) Product throughout the United States as soon as possible and without any limitation.  Upon information and belief, Liquidia will manufacture, market, store, distribute, sell and/or offer to sell Liquidia's Proposed § 505(b)(2) Product throughout the United States, including in the State of Delaware, and will derive substantial revenue therefrom.

9.     Further, upon information and belief, Liquidia has committed, aided, abetted, contributed to, or participated in the commission of a tortious act of patent infringement by submitting and maintaining its § 505(b)(2) Application that has led to foreseeable harm and injury to UTC, and will imminently commit, induce, aid, abet, contribute to, or participate in the commission of a tortious act of patent infringement by selling its Proposed § 505(b)(2) Product in the United States, including in the State of Delaware, which will lead to foreseeable harm and injury to UTC.  Upon information and belief, upon approval of Liquidia's § 505(b)(2) Application, Liquidia will place its Proposed § 505(b)(2) Product into the stream of commerce with the reasonable expectation or knowledge and the intent that such products will ultimately be purchased

and used by consumers in the State of Delaware.  Upon information and belief, Liquidia has made, and continues to make, substantial preparation to engage in the commercial manufacture, use, distribution, offer to sell, or sale of Liquidia's Proposed § 505(b)(2) Product.

10.     This Court also has personal jurisdiction over Liquidia because it has availed itself of the legal protections of the State of Delaware by, among other things, selecting the State of Delaware as the place of organization for itself and/or subsidiaries and consenting to jurisdiction by participating in lawsuits and/or asserting counterclaims and/or filing complaints in lawsuits that are filed in this Court.  *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:20-cv-755-RGA-JLH (D. Del.); *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:21-mc-377-RGA-JLH (D. Del.); *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:21-mc-325-RGA (D. Del.).

## BACKGROUND

11.     Pulmonary arterial hypertension (PAH) is a rare disease affecting the pulmonary vasculature and involving high pressure in the pulmonary arteries, which increases strain on the right ventricle of the heart, thereby leading to heart failure and death.

12.     In 2009,  FDA approved UTC NDA No. 022387 for TYVASO® (treprostinil) inhalation solution for the treatment of PAH.   FDA granted UTC a period of new indication exclusivity which runs through March 31, 2024.

13.     The '793 patent, entitled "Treprostinil Administration by Inhalation," was duly and legally issued by the United States Patent and Trademark Office on July 21, 2020, and is scheduled to expire on May 14, 2027.  The named inventors are Horst Olschewski, Robert Roscigno, Lewis J. Rubin, Thomas Schmehl, Werner Seeger, Carl Sterritt, and Robert Voswinckel.

14.     UTC is the lawful owner of the '793 patent by assignment of all right, title, and interest in and to the '793 patent, including the right to bring infringement suits thereon.

## ACTS GIVING RISE TO THIS ACTION

15.     Liquidia notified UTC by letter dated July 24, 2023 ("Liquidia's July 2023 Notice Letter") that it had submitted an amendment to NDA No. 213005 to FDA seeking approval to engage in the commercial manufacture, use and/or sale of Liquidia's Proposed § 505(b)(2) Product, prior to the expiration of the '793 patent.

16.     Liquidia's amendment to NDA No. 213005 describes a modification to the original application and submission of the amendment required a "Paragraph IV" certification. Liquidia's amendment to NDA No. 213005 provides the basis for a new infringement cause of action and warrants an automatic 30-month stay of approval.[1]

17.     Liquidia's July 2023 Notice Letter included a statement pursuant to 21 U.S.C. § 355(b)(3)(D)(ii) and 21 C.F.R. § 314.52(c)(6) purporting to recite Liquidia's factual and legal basis for its opinion that the '793 patent is invalid, unenforceable, and/or that certain claims are not, and will not, be infringed by the commercial manufacture, use or sale of Liquidia's Proposed § 505(b)(2) Product. The Notice Letter does not dispute infringement of claims 1, 4, or 6-8 of the '793 patent and includes only a conclusory statement that the claims of the '793 patent are invalid because of a decision by the Patent Trial and Appeal Board in an *Inter Partes* Review (IPR)

---

[1] *See* Notification Pursuant to § 505(b)(3)(B) of the Federal Food, Drug, & Cosmetic Act (21 U.S.C. § 355(b)(3)(B)(i)) and 21 C.F.R. § 314.52) from Liquidia Techs., Inc., to United Therapeutics Corp., The Corp. Trust, Inc., and Goodwin Procter LLP (Jul. 24, 2023) (attached as Exhibit B hereto); *FORM 10-Q*, U.S. SEC. & EXCHANGE COMM'N at 53 (Aug. 10, 2023), https://www.liquidia.com/static-files/8d6b2bd8-aa0d-459a-ab4e-a5cbe415d205 ("United Therapeutics may bring a new Hatch-Waxman suit for patent infringement, which may trigger a new mandatory 30-month delay . . . in approval of the 505(b)(2) NDA application").

proceeding. That IPR proceeding is currently on appeal, and UTC's opening brief includes at least three grounds justifying reversal.

18.     Upon information and belief, as of the date of Liquidia's July 2023 Notice Letter, Liquidia was aware of the statutory provisions and regulations set forth in 21 U.S.C. § 355(b)(3)(D)(ii) and 21 C.F.R. § 314.52(c)(6).

19.     UTC commenced this action before the expiration of 45 days from the date it received Liquidia's July 2023 Notice Letter.

20.     Because UTC brought suit within 45 days of receiving notice of Liquidia's "Paragraph IV" certification, this suit will trigger an automatic statutory 30-month stay of approval by the FDA of Liquidia's § 505(b)(2) Application to allow the parties time to adjudicate the merits of the infringement action before Liquidia launches its Proposed § 505(b)(2) Product. 21 U.S.C. § 355(j)(5)(B)(iii).

21.     Upon information and belief, Liquidia intends to commercially manufacture, distribute, sell, offer for sale, and/or import Liquidia's Proposed § 505(b)(2) Product upon, or in anticipation of, FDA approval.

22.     Upon information and belief, Liquidia will and/or has manufactured, imported, prepared, acquired, and/or stockpiled commercial batches of treprostinil sodium API and Liquidia's Proposed § 505(b)(2) Product for release, use, and/or sale upon FDA approval.

23.     Liquidia's manufacturing, importing, preparing, acquiring, and/or stockpiling is not solely for uses reasonably related to the development and submission of information for approval of Liquidia's § 505(b)(2) Application. Therefore, it does not qualify for the safe harbor in 35 U.S.C. § 271(e)(1).

24.     For example, as early as November 8, 2021, Liquidia's CEO, Damian deGoa, announced that Liquidia "will now focus our efforts on pre-commercial launch activities and the growing market opportunity for YUTREPIA in PAH and potential new indications."[2]  On March 16, 2023, in Liquidia's Full Year 2022 Financial Results and Corporate Update, Liquidia states that "the increase of $9.3 million or 40% [in general and administrative expenses] was primarily due to a $4.2 million increase in commercial, marketing, and personnel expenses in preparation for the potential commercialization of YUTREPIA . . . ."[3]  On August 10, 2023, in Liquidia's Second Quarter 2023 Financial Results and Corporate Update, Liquidia states that "there was a $2.2 million increase in expenses related to our YUTREPIA program driven by higher manufacturing and supply costs," and that "[t]he increase of $2.3 million or 33% [in general and administrative expenses] was primarily due to a $1.3 million increase in consulting and personnel expenses in preparation for the potential commercialization of YUTREPIA . . . ."[4]

25.     Liquidia has coordinated with respect to the manufacture, import, storage, and distribution of Liquidia's Proposed § 505(b)(2) Product, and will continue to do so, in substantial and meaningful preparation for immediate launch of Liquidia's Proposed § 505(b)(2) Product upon FDA approval.

---

[2] *FDA Grants Tentative Approval for Liquidia's YUTREPIA™ (Treprostinil) Inhalation Powder*, LIQUIDIA CORP. (Nov. 8, 2021), https://liquidia.com/news-releases/news-release-details/fda-grants-tentative-approval-liquidias-yutrepiatm-treprostinil.

[3] *Liquidia Corporation Reports Full Year 2022 Financial Results and Provides Corporate Update*, LIQUIDIA CORP. (Mar. 16, 2023) https://www.globenewswire.com/news-release/2023/03/16/2628438/0/en/Liquidia-Corporation-Reports-Full-Year-2022-Financial-Results-and-Provides-Corporate-Update.html.

[4] *Liquidia Corporation Reports Second Quarter 2023 Financial Results and Provides Corporate Update*, LIQUIDIA CORP. (Aug. 10, 2023) https://www.liquidia.com/news-releases/news-release-details/liquidia-corporation-reports-second-quarter-2023-financial.

## COUNT I:  INFRINGEMENT OF
## U.S. PATENT NO. 10,716,793 UNDER 35 U.S.C. § 271(e)

26.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

27.     Upon information and belief, Liquidia's Proposed § 505(b)(2) Product is covered by one or more claims of the '793 patent.

28.     Upon information and belief, Liquidia has indicated its intent to engage in the commercial manufacture, use, offer for sale, sale, marketing, storage, distribution, and/or importation of Liquidia's Proposed § 505(b)(2) Product, prior to the expiration of the '793 patent.

29.     Liquidia's submission and maintenance of its § 505(b)(2) Application for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of Liquidia's Proposed § 505(b)(2) Product prior to the expiration of the '793 patent is an act of infringement of the '793 patent under 35 U.S.C. § 271(e)(2).

30.     Upon information and belief, the commercial manufacture, use, offer for sale, sale and/or importation of Liquidia's Proposed § 505(b)(2) Product, if approved, will infringe one or more claims of the '793 patent.

31.     Upon information and belief, Liquidia has acted without a reasonable basis for believing that it would not be liable for infringement of the '793 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

32.     Upon information and belief, Liquidia has acted and/or is continuing to act despite an objectively high likelihood that its actions constituted infringement of a valid patent, and knew or should have known of that objectively high risk at least as early as the August 31, 2022 Trial Opinion in *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:20-cv-755-RGA-JLH, D.I. 433 (D. Del. Aug. 31, 2022).  Thus, upon information and belief, Liquidia's infringement of

the '793 patent has been, and continues to be, knowing, intentional and willful, thereby entitling

UTC to enhanced damages and reasonable attorneys' fees and costs under 35 U.S.C. § 284.

33.     UTC will be substantially and irreparably damaged and harmed if Liquidia's

infringement of the '793 patent is not enjoined by this Court.  Liquidia's acts of infringement of the

'793 patent have caused and will continue to cause UTC immediate and irreparable harm unless

such infringing activities by Liquidia, its officers, agents, servants, employees, parents,

subsidiaries, affiliate corporations, other business entities and all other persons acting in concert,

participation, or privity with them, and their successors and assigns are enjoined by this Court

pursuant to 35 U.S.C. § 283 and/or 35 U.S.C. § 271(e)(4)(B).  UTC does not have an adequate

remedy at law.

### COUNT II:  INFRINGEMENT OF
### U.S. PATENT NO. 10,716,793 UNDER 35 U.S.C. §§ 271(a)-(c)

34.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth

herein.

35.     Liquidia's § 505(b)(2) Application and its intention to engage in the commercial

manufacture, use, offer for sale, sale, and/or importation of Liquidia's Proposed § 505(b)(2)

Product upon receiving FDA approval of Liquidia's § 505(b)(2) Application prior to the expiration

of the '793 patent creates an actual and justiciable controversy with respect to infringement of the

'793 patent.

36.     Upon information and belief, Liquidia has indicated its intent to engage, and its past

engagement, in the commercial manufacture, use, offer for sale, sale, marketing, storage,

distribution, and/or importation of Liquidia's Proposed § 505(b)(2) Product prior to the expiration

of the '793 patent.

37.     Upon information and belief, Liquidia's Proposed § 505(b)(2) Product is covered by one or more claims of the '793 patent.

38.     Upon information and belief, the commercial manufacture, use, offer for sale, sale and/or importation of Liquidia's Proposed § 505(b)(2) Product, if approved, will infringe one or more claims of the '793 patent.

39.     Upon information and belief, upon FDA approval of Liquidia's § 505(b)(2) Application, Liquidia's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Liquidia's Proposed § 505(b)(2) Product will directly infringe one or more claims of the '793 patent, and will indirectly infringe by actively inducing and/or contributing to infringement by others, under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

40.     Upon information and belief, the use of Liquidia's Proposed § 505(b)(2) Product, in accordance with the YUTREPIA® label, if approved, will directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '793 patent under 35 U.S.C. § 271(a).

41.     Upon information and belief, Liquidia will induce others to infringe one or more claims of the '793 patent under 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting others to infringe, including, but not limited to the manufacturer of Liquidia's Proposed § 505(b)(2) Product, or its API, or other subsequent purchasers, distributors, or users thereof, which product or its manufacture or administration thereof constitutes direct infringement of one or more claims of the '793 patent.  Upon information and belief, Liquidia's aiding and abetting includes Liquidia's engagement of, contracting of, and/or encouragement of others to engage in the manufacture, use, sale, or importation of infringing products pursuant to Liquidia's § 505(b)(2) Application.

42.     Liquidia has actual knowledge of the '793 patent and will actively induce direct infringement of at least one claim of the '793 patent under 35 U.S.C. § 271(b) if Liquidia's § 505(b)(2) Application is approved and Liquidia's Proposed § 505(b)(2) Product is marketed, sold, stored, distributed, and/or imported.

43.     Upon information and belief, Liquidia will also infringe one or more claims of the '793 patent under 35 U.S.C. § 271(c) in that it will make, use, sell, offer to sell, and/or import Liquidia's Proposed § 505(b)(2) Product and/or the API thereof, which it knows has no substantial non-infringing uses.  Upon information and belief, subsequent purchasers, distributors, or users thereof will also directly infringe one or more claims of the '793 patent.

44.     To the extent Liquidia will and/or has manufactured, imported, prepared, acquired, and/or stockpiled Liquidia's Proposed § 505(b)(2) Product in the United States for sale in the United States in anticipation of FDA approval, such activities infringe or will infringe the '793 patent.

45.     Upon information and belief, Liquidia was and is aware of the existence of the '793 patent, and acted without a reasonable basis for believing that it would not be liable for infringement of the '793 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

46.     Upon information and belief, Liquidia has acted and/or is continuing to act despite an objectively high likelihood that its actions constituted infringement of a valid patent, and knew or should have known of that objectively high risk at least as early as the August 31, 2022 Trial Opinion in *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:20-cv-755-RGA-JLH, D.I. 433 (D. Del. Aug. 31, 2022). Thus, upon information and belief, Liquidia's infringement of the '793 patent has been, and continues to be, knowing, intentional and willful, thereby entitling UTC to enhanced damages and reasonable attorneys' fees and costs under 35 U.S.C. § 284.

47.     UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '793 patent is not enjoined by this Court.  Liquidia's acts of infringement of the '793 patent have caused and will continue to cause UTC immediate and irreparable harm unless such infringing activities by Liquidia, its officers, agents, servants, employees, parents, subsidiaries, affiliate corporations, other business entities and all other persons acting in concert, participation, or privity with them, and their successors and assigns are enjoined by this Court pursuant to 35 U.S.C. § 283.  UTC does not have an adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, UTC requests the following relief:

1.     A declaration that the '793 patent is infringed by Liquidia;

2.     A judgment or declaration that:

  a.   Liquidia has infringed at least one claim of the '793 patent under 35 U.S.C. § 271(e)(2) by submitting, maintaining and/or supporting the submission or maintenance of Liquidia's § 505(b)(2) Application; and

  b.   Liquidia will infringe, either literally or under the doctrine of equivalents, actively induce infringement of, and/or contribute to the infringement by others of the '793 patent under 35 U.S.C. §§ 271(a)-(c), (f) or (g), by making, using, selling, offering for sale, or importing into the United States Liquidia's Proposed § 505(b)(2) Product, or any product or compound that infringes one or more claims of the '793 patent, prior to the expiration date of the '793 patent, inclusive of any extension(s) and additional period(s) of exclusivity to which UTC is or may become entitled;

3.      A judgment ordering that the effective date of any FDA approval of Liquidia's NDA No. 213005 and an amendment thereto, permitting Liquidia to commercially manufacture, make, use, offer to sell, sell, market, or import into the United States Liquidia's Proposed § 505(b)(2) Product, be not earlier than the expiration date of the '793 patent, inclusive of any extension(s) and additional period(s) of exclusivity to which UTC is or may become entitled;

4.      A judgment pursuant to 35 U.S.C. § 271(e)(4)(B) and/or 35 U.S.C. § 283 preliminarily and permanently enjoining Liquidia, its officers, agents, servants, employees, parents, subsidiaries, affiliate corporations, other business entities and all other persons acting in concert, participation, or privity with them, and their successors and assigns, from infringing, contributorily infringing, or inducing others to infringe the '793 patent, including engaging in the commercial manufacture, use, sale, offer to sale and/or importation in the United States of the product that is the subject of Liquidia's § 505(b)(2) Application and/or any applicable DMF(s) until the expiration of the '793 patent, inclusive of any extension(s) and additional period(s) of exclusivity to which UTC is or may become entitled;

5.      A judgment awarding UTC damages or other monetary relief, pursuant to 35 U.S.C. § 271(e)(4)(C), for any engagement by Liquidia in commercial manufacture, use, sale, offer to sell and/or importation into the United States of any product that is the subject of Liquidia's § 505(b)(2) Application that infringes one or more claims of the '793 patent, prior to the expiration date of the '793 patent, including any

extension(s) and/or additional period(s) of exclusivity to which UTC is or may become entitled;

6.     A judgment in favor of UTC and against Liquidia determining that Liquidia has willfully and deliberately committed acts of patent infringement, and awarding UTC enhanced damages in light of Liquidia's willful infringement pursuant to 35 U.S.C. § 284, including reasonable attorneys' fees and costs;

7.     A judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional case and awarding UTC its attorneys' fees;

8.     An award of costs and expenses in this action to UTC; and

9.     Such further and other relief as this Court may deem just and proper.

OF COUNSEL:

William C. Jackson
Eric Levi
GOODWIN PROCTER LLP
1200 19th St. NW
Washington, DC 20036
(202) 346-4000

Huiya Wu
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Douglas Carsten
Art Dykhuis
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633

Adam W. Burrowbridge
Jake B. Vallen
Kavya Rallabhandi
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC 20001
(202) 756-8797

September 5, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

# EXHIBIT 2

**Nos. 22-2217, 23-1021**

United States Court of Appeals
for the Federal Circuit

UNITED THERAPEUTICS CORPORATION,

*Plaintiff-Cross-Appellant*,

v.

LIQUIDIA TECHNOLOGIES, INC.,

*Defendant-Appellant*.

*Appeal from the United States District Court for the
District of Delaware, No. 20-755, Judge Richard Andrews*

**APPELLANT LIQUIDIA TECHNOLOGIES, INC.
COMBINED PETITION FOR PANEL AND EN BANC REHEARING**

SANYA SUKDUANG
JONATHAN R. DAVIES
COOLEY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
ssukduang@cooley.com
jdavies@cooley.com

*Counsel of Record for Defendant-
Appellant Liquidia Technologies, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**   22-2217, 23-1021

**Short Case Caption**   United Therapeutics Corporation v. Liquidia Technologies, Inc.

**Filing Party/Entity**   Liquidia Technologies, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/23/2023

Signature:   /s/  Sanya Sukduang

Name:   Sanya Sukduang

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Liquidia Technologies, Inc. | | Liquidia Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| Sanya Sukduang, Cooley LLP | Jonathan Davies, Cooley LLP | Ivor R. Elrifi, Cooley LLP |
| Erik B. Milch, Cooley LLP | Deepa Kannappan, Cooley LLP | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

RULE 35(B)(2) AND 40(A)(5) STATEMENT .......................................1

REASONS FOR GRANTING THE PETITON .......................................2

SUMMARY OF THE APPEALED DISTRICT COURT DECISION ...................3

SUMMARY OF THE FEDERAL CIRCUIT PANEL DECISION .........................5

ARGUMENT ...............................................................6

    I.    IN ACCORDANCE WITH THE SUPREME COURT'S
DECISION IN *COMMIL*, THE PTAB'S '793 FWD
IMMEDIATELY NEGATES LIQUIDIA'S LIABILITY FOR
INDUCED INFRINGEMENT ............................................6

        A.    Subjective Intent is Required to Establish Induced
Infringement Liability ...............................................6

        B.    *Commil* Only Requires an IPR FWD to Negate Induced
Infringement Liability ...............................................7

        C.    This Court Should Grant En Banc Review Because the
Panel Decision's New Rule Governing Induced
Infringement Liability Conflicts with *Commil* .........................9

CONCLUSION ............................................................13

ADDENDUM

# TABLE OF AUTHORITIES

**CASES**

*Commil USA, LLC v. Cisco Systems, Inc.*,
575 U.S. 632 (2015)................................................................... *passim*

*Deckers Corp. v. U.S.*,
752 F.3d 949 (Fed. Cir. 2014) ...........................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)...........................................................................6

*Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*,
924 F.3d 1243 (Fed. Cir. 2019) ........................................................10

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
30 F.4th 1109 (Fed. Cir. 2022) ..........................................................6

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ..........................................................6

*U.S. v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021).........................................................................9

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018) ...............................................3, 5, 12

**STATUTES**

35 U.S.C. § 271(b) ......................................................................1, 6, 7

35 U.S.C. § 271(e) ............................................................................13

35 U.S.C. § 316........................................................................ *passim*

35 U.S.C. § 316(a)(11).........................................................................9

35 U.S.C. § 318..................................................................... *passim*

**RULES**

Fed. R. Civ. P. 35(a)(1) .....................................................................12

## RULE 35(B)(2) AND 40(A)(5) STATEMENT

Based on my professional judgment, I believe the panel decision is contrary

to the following decision of the Supreme Court of the United States and this Court:

*Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 644 (2015)

Based on my professional judgment, I also believe this appeal requires an

answer to the following precedent-setting question of exceptional importance:

1.    Whether an *Inter Partes* Review Final Written Decision from the

Patent Trial and Appeal Board rendering unpatentable all issued claims

should be considered in assessing an accused infringer's subjective

intent to induce infringement and whether such a decision is sufficient

to negate liability for induced infringement under 35 U.S.C. § 271(b).

Dated:  August 23, 2023        */s/  Sanya Sukduang*
                                     Sanya Sukduang
                                     Cooley LLP

                                     *Counsel for Defendant-Appellant*
                                     *Liquidia Technologies, Inc*

## REASONS FOR GRANTING THE PETITON

In *Commil*, the Supreme Court determined that a mere "good-faith belief in invalidity" is insufficient to negate liability for induced infringement, but separately identified several "proper ways" an accused infringer can move beyond a good-faith belief and obtain actual knowledge of patent invalidity. 575 U.S. at 645. One such "proper way" is through an "*inter partes* review at the [Board] and receiv[ing] a decision as to validity within 12 to 18 months." *Id.* (citing 35 U.S.C. § 316). Upon receiving that ruling, the Supreme Court made clear that an accused infringer "will be immune from liability." *Id.*

Rather than follow this clear guidance from the Supreme Court, the Panel instead declared a new rule imposing a different time point to negate the intent to induce infringement–*after* affirmance from this Court such that collateral estoppel attaches. ECF No. 61 ("Opinion"), 19. The Supreme Court said nothing in *Commil* that would lead to the conclusion that collateral estoppel would be needed to defeat the requisite scienter and immunize an accused infringer from liability. To the contrary, the Supreme Court, citing 35 U.S.C. § 316, made clear that only a Final Written Decision ("FWD"), obtained within 12 to 18 months, was necessary. Because the Panel's new rule requiring collateral estoppel is inconsistent with the timing set forth in the Supreme Court's *Commil* decision, rehearing should be granted.

2

Additionally, in its discussion of *Commil*, the Panel referenced that unpatentability is only confirmed once the Director of the United States Patent and Trademark Office issues a certificate under 35 U.S.C. § 318 cancelling claims. Opinion, 19. Thus, although the Panel correctly cited *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018), for the proposition that a panel affirmance of an *Inter Partes* Review ("IPR") has immediate collateral estoppel effect as to invalidity, the Panel has created ambiguity as to when, even under its holding, a decision in an IPR proceeding will negate intent for purposes of determining induced infringement liability – whether it occurs when collateral estoppel attaches or only at claim cancellation. Accordingly, rehearing should be granted to remove such ambiguity and make clear that an IPR FWD will negate the requisite intent for induced infringement, at the latest, when collateral estoppel attaches.

## SUMMARY OF THE APPEALED DISTRICT COURT DECISION

Co-pending with the district court's adjudication of infringement and validity of United Therapeutics Corporation's ("UTC") U.S. Patent No. 10,716,793 (the "'793 patent") was Liquidia's IPR of the '793 patent. The district court correctly noted that on July 19, 2022, prior to the district court's August 31, 2022 Opinion, the PTAB issued a FWD "invalidating all claims of the '793 patent as obvious." Appx00055; *see also*, Appx31148-31196. Based on the PTAB's '793 FWD,

Liquidia argued to the district court that pursuant to *Commil*, it cannot be liable for induced infringement of the '793 patent because Liquidia does not have the subjective intent to induce another's infringement of a patent deemed, under proper Patent Office procedures, invalid.  Appx31145; Appx31197-31201.  In assessing Liquidia's liability for induced infringement, the district court pointed to Liquidia's 2021 proposed label as sufficient evidence establishing Liquidia's intent to induce infringement.  Appx00055-00056; Appx29540-29541.  The district court also recited portions of *Commil* but stated that "[t]he Supreme Court never stated, however, that a PTAB decision invalidating patent claims in an IPR will preclude liability before it becomes final and nonappealable."  Appx00056 (citing *Commil*, 575 U.S. at 644-45).  As such, the district court, without addressing the '793 FWD's impact on Liquidia's ***subjective intent***, determined that *Commil* does not compel the court "to treat the '793 patent as invalid for purposes of assessing Liquidia's induced infringement."  *Id.*  The district court went on to state that an IPR decision does not have collateral estoppel effect until affirmed by the Federal Circuit---or the parties waive their rights to appeal.  *Id.*  The district court also noted that the '793 patent claims are not cancelled until the PTO Director issues a certificate, pursuant to 35 U.S.C. § 318, canceling the claims.  *Id.*  The district court concluded that the "PTAB's decision—which is not yet final—has no impact on my finding of induced infringement."  Appx00057.

## SUMMARY OF THE FEDERAL CIRCUIT PANEL DECISION

Despite extensive briefing before the Panel on the impact of the PTAB's '793 FWD in view of *Commil*, the Panel summarily determined, as an issue of first impression, that an IPR FWD "does not negate an intent to infringe that is otherwise supported by the evidence." Opinion, 19; Blue Br., 18-19, 46-54; Red Br., 24-31; Yellow Br., 15-19. In doing so the Panel, like the district court, did not (1) account for Liquidia's **subjective intent** to induce infringement after issuance of the '793 FWD; (2) address *Commil's* reference to the importance of an IPR FWD within "12 to 18 months"; or (3) account for *Commil's* citation to 35 U.S.C. § 316. Opinion, 18-19. Instead, relying solely on Liquidia's proposed 2021 label, prepared before the PTAB's July 2022 '793 IPR FWD (Appx29540), the Panel determined the district court did not commit error in finding induced infringement. Opinion, 18.

To support its conclusion, the Panel cited *XY* for the proposition that "an IPR decision does not have collateral estoppel effect until that decision is affirmed or the parties waive their appeal rights." *Id*., 19. The Panel also stated that only the Director, upon issuance of a certificate under 35 U.S.C. § 318, can finally cancel claims that were previously determined to be unpatentable. *Id*.

## ARGUMENT

## I. IN ACCORDANCE WITH THE SUPREME COURT'S DECISION IN *COMMIL*, THE PTAB'S '793 FWD IMMEDIATELY NEGATES LIQUIDIA'S LIABILITY FOR INDUCED INFRINGEMENT

### A. Subjective Intent is Required to Establish Induced Infringement Liability

An essential element of induced infringement under 35 U.S.C. §271(b) is intent, and as explained by this Court, relying on Supreme Court precedent, "[t]he intent element requires 'knowledge that the induced acts constitute patent infringement,' which can be established by a proper finding of 'willful blindness.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 766-71 (2011)); *see also*, *Commil*, 575 U.S. at 642 (induced infringement "requires proof the defendant knew the acts were infringing. And the [Supreme] Court's opinion was clear in rejecting any lesser mental state as the standard."). Consequently, "[t]he intent standard for inducement, therefore, 'focuses on, and can be met by proof of, the defendant's subjective state of mind, whether actual knowledge or the subjective beliefs (coupled with action to avoid learning more) that characterizes willful blindness.'" *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (quoting *TechSec*, 978 F.3d at 1286). Accordingly, any determination on induced infringement requires a finding that the accused infringer has the subjective state of mind to induce another to infringe.

6

### B. *Commil* Only Requires an IPR FWD to Negate Induced Infringement Liability

The Supreme Court in *Commil* was faced with the questions of "whether ***knowledge of***, ***or belief in***, a patent's validity is required for induced infringement under § 271(b)." 575 U.S. at 639 (emphasis added). The Supreme Court answered this question by holding that a mere ***good faith belief*** of patent invalidity is not a defense to induced infringement. *Id*. at 642 ("[B]elief regarding validity cannot negate the scienter required under § 271(b)."). However, in contrasting a good faith belief with actual "knowledge of" invalidity, the Supreme Court stated: "[t]o be sure, if at the end of the day, an act that would have been an . . . inducement to infringe pertains to a patent that is ***shown to be invalid***, there is no patent to be infringed." *Id.* at 641, 644 (emphasis added). Going further, the Supreme Court confirmed that the subjective intent element of induced infringement is negated, and liability eliminated, if "[a]n accused infringer can . . . prove that patent in suit is invalid[,]" because "***if the patent is indeed invalid***, ***and shown to be so under proper procedures, there is no liability***." *Id.* at 644 (emphasis added).

The *Commil* decision determined that a mere good faith belief in patent invalidity was insufficient to negate induced infringement liability. The Supreme Court, however, went on to explain that "accused inducers who believe a patent is invalid have various ***proper ways to obtain a ruling to that effect***." *Id.* at 645 (emphasis added). As listed by the Supreme Court, [t]he "proper ways" to obtain a

"ruling" of invalidity include a declaratory judgment action in a district court seeking to declare the patent invalid; *ex parte* reexamination before the PTO; raising an affirmative defense of invalidity at the district court; or seeking "*inter partes* review at the [Board] and receiv[ing] a decision as to validity within 12 to 18 months. *See* [35 U.S.C.] § 316." *Id.* Under any of these "proper ways," an accused infringer can obtain a "ruling" of invalidity, and thus "actual knowledge" of invalidity, immediately negating liability for induced infringement.

Germane here is the Supreme Court's discussion of IPR proceedings. In particular, in referencing a "decision as to validity within 12 to 18 months[,]" and specifically citing 35 U.S.C. § 316, the Supreme Court made clear that only an initial FWD or "ruling" was required—not a later decision creating finality with accompanying collateral estoppel effect. *Id.* at 645.

Section 316 statutorily requires the Board to issue its IPR FWD within 12 to 18 months:

> [T]he final determination in an inter partes review [must] be issued **not later than 1 year** [12 months] after the date on which the Director notices the institution of a review under this chapter, **except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months** [18 months], and may adjust the time periods in this paragraph in the case of joinder under section 315(c)[.]

8

35 U.S.C. § 316(a)(11) (emphases added).  The *Commil* Court stated plainly that an IPR FWD is the type of "ruling" an accused infringer can point to in order to negate the scienter element of induced infringement.

Further establishing that an IPR FWD, alone, is sufficient to immediately negate induced infringement liability is what the Supreme Court ***did not*** rely on.  For instance, *Commil* ***did not*** reference issuance of a Director's certificate cancelling claims under 35 U.S.C. § 318(b).  Section 318 is not foreign to the Supreme Court, which has cited it in several cases, including *U.S. v. Arthrex, Inc.*, 141 S. Ct. 1970, 1978 (2021).  In *Arthrex*, 35 U.S.C. § 316 was also cited (*id.* at 1977), demonstrating that *Commil's* reliance on § 316, and not § 318, was purposeful.  Further, *Commil* discussed obtaining a "ruling" of invalidity, of which an IPR FWD is one.  *Commil* never mentioned, let alone required, affirmance or finality of a ruling or cancellation of patent claims in order to achieve the result of negating scienter or liability.

### C.  This Court Should Grant En Banc Review Because the Panel Decision's New Rule Governing Induced Infringement Liability Conflicts with *Commil*

By announcing a new rule that liability for induced infringement cannot be negated by an IPR FWD invalidating all asserted claims, the Panel's decision is in direct conflict with Supreme Court precedent.  En banc review is warranted to correct this legal error.

Collateral estoppel based on an affirmance of an IPR FWD invalidating all asserted claims is a validity issue—not an infringement issue; it prevents UTC from re-litigating the validity of the '793 patent. *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250-51 (Fed. Cir. 2019). The question before the Panel was not whether the '793 patent was invalid, but instead the impact of the '793 FWD on Liquidia's **subjective intent** to induce infringement. The Panel conflated the subjective intent question with the question of validity by requiring collateral estoppel before an IPR FWD has any effect, thereby converting a question of infringement into a question of validity. *Commil* made clear this was not the proper inquiry. 575 U.S. at 643 ("[I]nfringement and invalidity are separate matters under patent law.") In other words, the Panel's new rule improperly collapses the issue of intent to induce infringement into the analysis of validity, holding that an accused infringer's subjective state of mind cannot change until an IPR FWD is affirmed on appeal (*i.e.*, when validity has been finally determined by collateral estoppel). This timing is legally incorrect under *Commil*.

By stating that an IPR "ruling" obtained with 12 to 18 months was a "proper way" for accused infringers to obtain a successful outcome immunizing them from liability, the Supreme Court set this timing at 12 to 18 months, not significantly later when collateral estoppel applies. *Id.* at 645. In fact, the Supreme Court equated IPR FWD's obtained within 12 to 18 months with (unaffirmed) district court decisions

on invalidity obtained at trial—both "proper ways" allowing an accused infringer to obtain actual knowledge of invalidity and immunity from induced infringement liability while also permitting a patent owner with a full and fair opportunity to be heard. *Id.*

The Supreme Court's determination that an IPR FWD is sufficient to negate liability makes sense when assessing induced infringement because that decision, obtained 12 to 18 months after an IPR petition is filed, directly and immediately implicates the subjective state of mind of an accused inducer, such as Liquidia. A government entity, in fact the very entity in charge of issuing patents, is telling the world that the patent is invalid—a company in the marketplace should be able to rely on that government entity's determination. To be clear, there can be no dispute that the '793 patent has been invalidated, and Judge Lourie acknowledged as much during oral argument. *See* Oral Arg. at 14:00-14:13, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2217_05032023.mp3. Thus, knowledge of invalidity, as opposed to a mere good faith belief, has been obtained. And this knowledge alone, as opposed to affirmance on appeal to this Court, is immediately sufficient under *Commil* to negate Liquidia's liability for induced infringement and keeps separate the infringement and validity inquiries.

Further, by referencing claim cancellation under 35 U.S.C. § 318 in the context of assessing intent to induce infringement, the Panel not only completely

disregarded the statutory section actually relied on in *Commil*—§ 316—but created ambiguity as to whether both collateral estoppel ***and*** claim cancellation under § 318 is required to negate for the intent to induce infringement.  There is simply no factual or legal basis to deviate from the timing set forth in *Commil* and require claim cancellation as an additional prerequisite to negate the intent to induce infringement.

The Panel's decision, referencing the cancellation of claims under 35 U.S.C. § 318, opens the door for patentees to argue that, although an affirmed IPR FWD on invalidity has immediate preclusive effect on the issue of validity, it has no preclusive effect for assessing the intent to induce infringement until the claims are cancelled.  In sum, the Panel's decision could be interpreted to require more to negate the intent to induce infringement of a patent than is needed for an affirmed invalidity decision to have preclusive effect as to the validity of the very same patent in a co-pending or subsequent proceeding.  To the extent the Court believes the Panel's decision requires both collateral estoppel and claim cancellation under § 318 before liability for intent to induced infringement can be negated, then en banc review is needed to address the degree to which this Court's decision in *XY* has been overruled.  *See Deckers Corp. v. U.S.*, 752 F.3d 949, 964 (Fed. Cir. 2014) (explaining a panel may be overruled only by an intervening Supreme Court or en banc decision); Fed. Cir. R. 35(a)(1).

Finally, giving immediate effect to an IPR FWD in the context of induced infringement is also consistent with the policy behind Congressional enactment of IPR proceedings, which is to prevent invalid patents from having an adverse impact on the public. Here, despite the fact that the PTAB's '793 IPR FWD invalidated all claims issued a month before the district court's decision, the district court nonetheless issued a Hatch-Waxman injunction under 35 U.S.C. § 271(e)(4), based solely on the '793 patent, preventing the FDA from granting final approval to Liquidia's NDA. Appx00073; Appx00076. As a result, pulmonary arterial hypertension patients have been deprived of Liquidia's novel dry powder therapeutic treatment. Appx00021-00022; Appellee's Motion to Expedite Briefing and Oral Argument at *1-2, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 2023-1805 (Fed. Cir. May 22, 2023), ECF No. 10. A patent deemed invalid by the PTAB in an IPR FWD should not be the basis for an injunction.

## CONCLUSION

The Panel's newly enacted rule is squarely in conflict with the Supreme Court's decision in *Commil* and en banc rehearing is required. And because, under *Commil*, the PTAB's '793 IPR FWD negates Liquidia's intent to induce infringement, the en banc court should reverse the district court's decision.

Additionally, to the extent the Court believes the Panel's decision requires ***both*** collateral estoppel and claim cancellation under § 318 before intent to induce

infringement can be negated, Panel rehearing and/or en banc review is needed to rectify this error.

Dated: August 23, 2023                    Respectfully submitted,

                                          */s/ Sanya Sukduang*
                                          Sanya Sukduang
                                          Jonathan R. Davies
                                          Cooley LLP
                                          1299 Pennsylvania Ave., NW
                                          Suite 700
                                          Washington, DC 20004
                                          Telephone: (202) 842-7800
                                          Facsimile: (202) 842-7899

                                          *Counsel for Defendant-Appellant Liquidia*
                                          *Technologies, Inc.*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 23rd day of August, 2023, I caused this Petition for Panel and En Banc Rehearing to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the all registered CM/ECF users.

/s/ *Sanya Sukduang*
Sanya Sukduang
Cooley LLP

*Counsel for Defendant-Appellant*
*Liquidia Technologies, Inc*

**CERTIFICATE OF COMPLIANCE**

The foregoing filing complies with the type-volume limitations of the Federal

Rules of Appellate Procedure and Federal Circuit Rules, has been prepared using a

proportionally-spaced typeface, and includes 2,992 words.

Dated:  August 23, 2023          _/s/  Sanya Sukduang_____
                                 Sanya Sukduang
                                 Cooley LLP

                                 *Counsel for Defendant-Appellant*
                                 *Liquidia Technologies, Inc*

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

———————————

**UNITED THERAPEUTICS CORPORATION,**
*Plaintiff-Cross-Appellant*

**v.**

**LIQUIDIA TECHNOLOGIES, INC.,**
*Defendant-Appellant*

———————————

2022-2217, 2023-1021

———————————

Appeals from the United States District Court for the District of Delaware in No. 1:20-cv-00755-RGA-JLH, Judge Richard G. Andrews.

———————————

Decided: July 24, 2023

———————————

SANYA SUKDUANG, Cooley LLP, Washington, DC, argued for defendant-appellant. Also represented by JONATHAN DAVIES; DEEPA KANNAPPAN, Palo Alto, CA; ERIK BENTON MILCH, Reston, VA.

WILLIAM M. JAY, Goodwin Procter LLP, Washington, DC, argued for plaintiff-cross-appellant. Also represented by WILLIAM COVINGTON JACKSON, JAIME SANTOS, ROHINIYURIE TASHIMA, JENNY J. ZHANG; GERARD JUSTIN CEDRONE, Boston, MA; ADAM WILLIAM BURROWBRIDGE. McDermott Will & Emery, LLP, Washington, DC; DOUGLAS H. CARSTEN, ARTHUR PAUL DYKHUIS, Irvine, CA;

SHAUN R. SNADER, United Therapeutics Corporation,
Washington, DC.

———————————

Before LOURIE, DYK, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Liquidia Technologies, Inc. ("Liquidia") appeals from a decision of the United States District Court for the District of Delaware holding that (1) claims 1, 4, and 6–8 of U.S. Patent 10,716,793 ("the '793 patent") are not invalid and are infringed by Liquidia and (2) claims 1–3 of U.S. Patent 9,593,066 ("the '066 patent") are invalid as anticipated, but are otherwise infringed by Liquidia. United Therapeutics Corporation ("United Therapeutics") cross-appeals from the court's decision holding that (1) claims 1–3, 6, and 9 of the '066 patent are invalid as anticipated and (2) claims 6, 8, and 9 of the '066 patent are not infringed by Liquidia. *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436 (D. Del. 2022) ("*Decision*"). For the reasons provided below, we affirm.

BACKGROUND

United Therapeutics holds New Drug Application ("NDA") No. 022387 for Tyvaso®, an inhaled solution formulation of treprostinil approved for the treatment of pulmonary hypertension ("PH"). Pulmonary hypertension is a potentially life-threatening condition characterized generally by abnormally high blood pressure in the lungs. For many patients, treprostinil is used in treating pulmonary hypertension because it is a vasodilator that reduces vasoconstriction in the pulmonary vasculature, thereby decreasing blood pressure.

Experts consider that there are five subgroups of pulmonary hypertension: Group 1, pulmonary arterial hypertension ("PAH"); Group 2, pulmonary venous hypertension, *i.e.*, pulmonary hypertension related to left-heart disease;

Group 3, pulmonary hypertension associated with disorders damaging the lungs; Group 4, pulmonary hypertension caused by chronic thrombotic or embolic disease, including chronic blood clots in the lungs; and Group 5, a miscellaneous category for conditions that do not fit well into the other four subgroups. Groups 1, 3, 4, and 5 are caused by conditions affecting the pulmonary arteries or precapillary vessels of the lungs ("precapillary PH"), while Group 2 typically develops as a result of a cardiac-based etiology ("postcapillary PH"). Due to differing etiologies, each group may require group-specific treatment.

United Therapeutics owns the '793 and '066 patents, which are generally directed to methods of treating pulmonary hypertension and to pharmaceutical compositions comprising treprostinil. The '793 and '066 patents are listed in the FDA's Orange Book for Tyvaso.

Liquidia filed NDA No. 213005 for Yutrepia™ under § 505(b)(2) of the Food, Drug, and Cosmetic Act (codified at 21 U.S.C. § 355(b)(2)). [1] Yutrepia is a dry powder

---

[1] Under the Drug Price Competition and Patent Term Restoration Act of 1984 (the Hatch-Waxman amendments to the Food, Drug, and Cosmetic Act), an NDA filed under § 505(b)(2) contains full reports of investigations of safety and effectiveness, where at least some of the information used for approval comes from studies that were not conducted for or by the applicant. Such an NDA is one of two abbreviated approval pathways introduced by the Hatch-Waxman amendments, the other being an abbreviated new drug application ("ANDA") filed under § 505(j) (codified at 21 U.S.C. § 355(j)). 35 U.S.C. § 271(e)(2), the statutory provision delineating acts of infringement, covers both types of applications: "It shall be an act of infringement to submit . . . an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in

inhalation formulation of treprostinil but is not a generic version of any currently marketed drug. Pursuant to § 505(c)(3)(C) (codified at 21 U.S.C. § 355(c)(3)(C)), United Therapeutics sued Liquidia within 45 days of receipt of notice of Liquidia's NDA in the United States District Court for the District of Delaware alleging infringement of the '066 patent. J.A. 171, 190. In addition, after Liquidia filed its NDA, United Therapeutics filed another patent application that eventually issued as the '793 patent, which was subsequently added to the district court litigation. J.A. 208.

In parallel, Liquidia filed a petition for *inter partes* review ("IPR") of the '793 patent, alleging that all claims would have been unpatentable as obvious over prior art at the time of the invention. On July 19, 2022, the Board issued a Final Written Decision finding all claims of the '793 patent unpatentable as obvious. *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406, 2022 WL 2820717 (P.T.A.B. July 19, 2022). United Therapeutics filed a Request for Rehearing, challenging whether various asserted references qualified as prior art. J.A. 36648. In its Rehearing Decision, the Board found that the references were prior art, again holding the claims of the '793 patent unpatentable as obvious. United Therapeutics filed a Notice of Appeal in that case on April 26, 2023. Liquidia filed a motion for expedited appeal, which has been denied. The appeal is currently pending in this court.

## I. The '793 Patent

The '793 patent is directed to a method of treating pulmonary hypertension comprising inhalation of treprostinil. Asserted claim 1 of the '793 patent is the only independent claim and reads as follows:

––––––––––––––––––––

section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent[.]"

> 1.    A method of treating pulmonary hyper-
> tension comprising administering by inhala-
> tion to a human suffering from pulmonary
> hypertension a therapeutically effective sin-
> gle event dose of a formulation comprising
> treprostinil or a pharmaceutically acceptable
> salt thereof with an inhalation device,
> wherein the therapeutically effective single
> event dose comprises from 15 micrograms to
> 90 micrograms of treprostinil or a pharmaceu-
> tically acceptable salt thereof delivered in 1 to
> 3 breaths.

'793 patent at col. 18 ll. 23–31.

The additional asserted dependent claims include lim-
itations directed to dry powder inhalers (claim 4), powder
formulations (claim 6), powder formulations comprising
particles less than 5 micrometers in diameter (claim 7), and
formulations containing no metacresol (claim 8). *See id.* col.
18 ll. 36–37, 40–45.

In the district court, United Therapeutics argued that,
although Liquidia's proposed product had not yet been
marketed, when marketed, it (1) would directly infringe
claims 1, 4, and 6–8 of the '793 patent and (2) would also
induce infringement of those claims. Liquidia responded
that the asserted claims were invalid as lacking adequate
enablement and written description under 35 U.S.C. § 112.

The district court found that United Therapeutics
showed that a single administration of treprostinil, as re-
quired by claim 1, improves a patient's hemodynamics, es-
tablishing that administration of Liquidia's Yutrepia,
comprising treprostinil, at the claimed doses will also im-
prove a patient's hemodynamics. The court concluded that
United Therapeutics thus proved by a preponderance of the
evidence that the administration of Yutrepia will directly
infringe claims 1, 4, and 6–8 of the '793 patent.

The district court also concluded that Liquidia's argument that it lacked specific intent to induce infringement lacked merit.  Liquidia argued that, because the Yutrepia label does not encourage administration of a therapeutically effective single event dose, it does not induce infringement.  The court noted that the label does not need to provide hemodynamic data to constitute inducement of infringement; instead, it merely needs to instruct doctors and patients to administer a therapeutically effective single event dose.  The court found that the label's instructions will inevitably lead to the administration of a therapeutically effective single event dose.  The court thus concluded that United Therapeutics proved by a preponderance of the evidence that Liquidia will induce infringement of claims 1, 4, and 6–8 of the '793 patent.

The district court further found that the asserted claims were not invalid for lack of enablement or written description.  First, the court construed "treating pulmonary hypertension" as encompassing all five groups of pulmonary hypertension, noting that the specification of the '793 patent expressly includes all five groups when describing "pulmonary hypertension."  Second, the court found that a skilled artisan would not need to engage in undue experimentation to practice the full scope of the claimed treatment of pulmonary hypertension, despite potential safety concerns in treating Group 2 PH patients, and that the claims did not require safety and efficacy.  Third, the court found that the claims were not invalid for lack of written description, finding that a skilled artisan would, based on the specification, understand that treprostinil would effectively vasodilate the pulmonary vasculature, improve hemodynamics, and treat a patient's elevated pulmonary blood pressure.  As a result of the court's findings that the claims were not invalid but were infringed, the court stayed approval of Liquidia's NDA for Yutrepia until May 5, 2027, the expiration date of the '793 patent.

## II. The '066 Patent

The '066 patent is directed to a pharmaceutical composition comprising treprostinil and a process of preparing a pharmaceutical product comprising treprostinil.

Asserted claim 1 of the '066 patent reads as follows:

> 1.    A pharmaceutical composition comprising treprostinil or a pharmaceutically acceptable salt thereof, said composition prepared by a process comprising providing a starting batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis steps, forming a salt of treprostinil by combining the starting batch and a base, isolating the treprostinil salt, and preparing a pharmaceutical composition comprising treprostinil or a pharmaceutically acceptable salt thereof from the isolated treprostinil salt, whereby a level of one or more impurities found in the starting batch of the treprostinil is lower in the pharmaceutical composition, and wherein said alkylation is alkylation of benzindene triol.

'066 patent at col. 17 ll. 51–63.

Asserted claim 6 of the '066 patent reads:

> 6.    The pharmaceutical composition of claim 1, wherein the isolated salt is stored at ambient temperature.

*Id.* col. 18 ll. 34–35.

Asserted claim 8 of the '066 patent reads:

> 8.    A process of preparing a pharmaceutical product comprising treprostinil or a pharmaceutically acceptable salt thereof, comprising alkylating a triol intermediate of the formula:

> hydrolyzing the resulting compound to form
> treprostinil, forming a salt of treprostinil sta-
> ble at ambient temperature, storing the
> treprostinil salt at ambient temperature, and
> preparing a pharmaceutical product from the
> treprostinil salt after storage, wherein the
> pharmaceutical product comprises treprosti-
> nil or a pharmaceutically acceptable salt
> thereof.

*Id.* col. 18 ll. 38–61.

Additional asserted dependent claims are directed to crystalline forms (claim 2), a base selected from the group consisting of sodium, ammonia, potassium, calcium, etha-nolamine, diethanolamine, N-methylglucamine, and cho-line (claim 3), and a pharmaceutical product prepared by the process recited in claim 8 (claim 9). *See id.* col. 17 ll. 64–67; col. 18 ll. 27–28, 62–63.

In the district court, United Therapeutics argued that Liquidia infringed claims 1–3, 6, 8, and 9 of the '066 patent. Liquidia responded that claims 1–3, 6, and 9 were invalid as anticipated by Moriarty[2] and that claims 1–3 and 6 were invalid as lacking written description support. Liquidia did not challenge the validity of claim 8, which is a chemical

---

[2]    R.M. Moriarty et al., *The Intramolecular Asymmet-ric Pauson-Khand Cyclization as a Novel and General Ste-reoselective Route to Benzindene Prostacyclins: Synthesis of UT-15 (Treprostinil)*, 69 J. ORGANIC CHEM. 1890 (2004).

process claim, in contrast to the other claims that are directed to compositions.

The district court found that United Therapeutics showed by a preponderance of the evidence that Liquidia's Yutrepia would infringe claims 1–3 of the '066 patent because Yutrepia met the impurities limitations of claim 1. But the court also found that claims 1–3, 6, and 9 were invalid as anticipated by Moriarty. Moriarty discloses the synthesis of analogues of benzindene prostacyclins, including treprostinil, which is designated in the publication as UT-15. Moriarty at 1890, 1892. The court also found that Liquidia showed by clear and convincing evidence that the claimed treprostinil product is functionally and structurally the same as the UT-15 treprostinil disclosed in Moriarty. The court thus concluded that claims 1–3 would have been infringed by Liquidia, but for the finding of anticipation, and that claims 6 and 9 were invalid as anticipated by Moriarty but not infringed by Liquidia.

In finding a lack of infringement of claim 6, the court construed the terms "ambient temperature" as room temperature (equal to or less than the range of 15°C to 30°C) and "stored"/"storing"/"storage" to have its plain and ordinary meaning. Using these constructions, the court determined that United Therapeutics failed to show by a preponderance of the evidence that Liquidia's Yutrepia production process stored treprostinil at ambient temperature, and therefore found that claims 6, 8, and 9 were not infringed. The court further found that any storage between steps of Liquidia's manufacturing process did not meet the limitations of claims 8 and 9, which require storage of treprostinil before preparing a pharmaceutical product.

The district court also found that the specification provided adequate written description support for the impurities limitation in claim 1, and that a skilled artisan would understand that the inventors were in possession of the

composition with the claimed impurities.  The court thus concluded that Liquidia did not prove by clear and convincing evidence that claims 1–3 and 6 of the '066 patent were invalid for lack of written description.

In summary, the district court concluded that (1) claims 1, 4, and 6–8 of the '793 patent were not invalid and were infringed by Liquidia; (2) claims 1–3 of the '066 patent were invalid as anticipated by Moriarty and would have been infringed by Liquidia but for the finding of anticipation; (3) claims 6 and 9 of the '066 patent were invalid as anticipated by Moriarty and not infringed by Liquidia; and (4) claim 8 of the '066 patent was not invalid and not infringed by Liquidia.  Liquidia appealed, and United Therapeutics cross-appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## Discussion

Liquidia raises five issues on appeal.  First, Liquidia contends that the district court erred in construing the claim limitation "treating pulmonary hypertension" in claim 1 of the '793 patent not to include safety and efficacy.  Second, Liquidia argues that the court erred in finding the asserted claims of the '793 patent enabled.  Third, Liquidia contends that the court clearly erred in finding the asserted claims of the '793 patent supported by written description.  Fourth, Liquidia contends that the court clearly erred in finding Liquidia liable for induced infringement of claims 1, 4, and 6–8 of the '793 patent.  Fifth, Liquidia argues that the court clearly erred in finding claims 1–3 of the '066 patent to be infringed.

United Therapeutics raises two issues on cross-appeal.  First, United Therapeutics asserts that the district court clearly erred in finding that Liquidia does not infringe claims 6 and 8 of the '066 patent.  Second, United Therapeutics contends that the court clearly erred in finding that claims 1–3, 6, and 9 of the '066 patent are invalid as

anticipated by Moriarty. We address each appeal and cross-appeal argument in turn.

Infringement is a question of fact that we review, after a bench trial, for clear error. *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017). A patent is directly infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). "Whoever actively induces infringement of a patent shall be liable as an infringer." *Id.* § 271(b).

We review district court findings of anticipation under 35 U.S.C. § 102 and satisfaction of the written description requirement under 35 U.S.C. § 112 for clear error. *Nuvo Pharms. (Ir.) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*, 923 F.3d 1368, 1376 (Fed. Cir. 2019) (written description); *Forest Lab'ys, Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1268 (Fed. Cir. 2007) (anticipation). Enablement "is a question of law" that we review *de novo* after a bench trial. *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007). We review questions of claim construction *de novo* but review any underlying facts for clear error. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 991 (Fed. Cir. 1995); *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019).

## I. The '793 Patent

### A.

We first consider Liquidia's challenge to the district court's determination that the meaning of "treating pulmonary hypertension" does not require a showing of safety and efficacy. It asserts that a skilled artisan would understand the plain and ordinary meaning of "treating pulmonary hypertension" to encompass a method that accomplishes that goal safely and effectively. It asserts

that the parties' experts agreed that treatment with treprostinil, a vascular dilator, would not benefit Group 2 PH patients.  It further asserts that while the specification of the '793 patent states that the treatment does not result in significant side effects, '793 patent at col. 5 ll. 16–20, and that administration of treprostinil is safe, *id.* col. 9 ll. 30–31, its expert testified that a skilled artisan would have concerns about administering inhaled treprostinil to Group 2 PH patients and that at least one earlier study, in which a treprostinil-like prostacyclin was administered to Group 2 PH patients, failed due to increased mortality.

United Therapeutics responds that the district court did not err in finding that the claimed administration of treprostinil would improve hemodynamics and hence treat a patient's elevated pulmonary blood pressure, including Group 2 PH patients.  It asserts that Liquidia attempts to import limitations into the claims and that nothing in the specification requires the importation of safety and efficacy limitations into the claims.  Finally, United Therapeutics asserts that while Liquidia's statements that a skilled artisan would have safety concerns in treating Group 2 PH patients with treprostinil may factor into Food and Drug Administration ("FDA") approval, they do not factor into claim interpretation.

As a threshold matter, we agree with the district court that "treating pulmonary hypertension" includes treating all five groups of pulmonary hypertension patients.  The court did not err in finding that the specification encompasses all five groups when describing "pulmonary hypertension."  In fact, the specification does not limit the scope of "pulmonary hypertension" to any particular subset of pulmonary hypertension patients.  It refers to both "precapillary pulmonary hypertension" and "pulmonary hypertension," which, as the court found, demonstrates that the inventors view precapillary PH only as a subset of the broadly claimed "pulmonary hypertension."  Thus, "treating pulmonary hypertension" includes treating all five

groups of pulmonary hypertension. *See* '793 patent at col. 9 ll. 36–37, col. 12 ll. 64–65, col. 16 ll. 64–65.

While the claims require "treating pulmonary hypertension comprising administering . . . a therapeutically effective single event dose of a formulation comprising treprostinil," *Decision*, at 467, the district court gave the phrase "therapeutically effective" a limiting construction. The district court held, and Liquidia does not challenge on appeal, that a person of ordinary skill in the art "would understand the plain and ordinary meaning of 'therapeutically effective single dose' to be a dose given in a single treatment session that causes an improvement in a patient's hemodynamics (reduced PAP or PVR)." *Id.* at 461; Appellee's Br. 39. We need not address whether the district court's construction was correct because Liquidia, on appeal, does not challenge that construction. Read in context, the claim language "treating pulmonary hypertension" does not import any additional efficacy limitations or any safety limitations.

Absent incorporation of safety and efficacy requirements in the claims, Liquidia's argument concerning the safety and efficacy of treating Group 2 PH patients is not before us. Questions of safety and efficacy in patent law have long fallen under the purview of the FDA. *In re Brana*, 51 F.3d 1560, 1567 (Fed. Cir. 1995) (noting that "the requirements under the law for obtaining a patent" are different from "the requirements for obtaining government approval to market a particular drug for human consumption"); *Scott v. Finney*, 34 F.3d 1058, 1063 (Fed. Cir. 1994) ("Testing for the full safety and effectiveness . . . is more properly left to the [FDA]. Title 35 does not demand that such human testing occur within the confines of Patent and Trademark Office (PTO) proceedings."); *In re Anthony*, 414 F.2d 1383, 1395 (CCPA 1969) ("Congress has given the responsibility to the FDA, not to the Patent Office, to determine in the first instance whether drugs are sufficiently safe for use that they can be introduced in the commercial

market . . . .").  We decline to insert the FDA's responsibilities into claims by importing requirements where they do not recite such limitations.

### B.

We next turn to Liquidia's challenge to the district court's finding that the claims of the '793 patent are adequately enabled and supported by written description. Liquidia argues that the specification of the '793 patent provides no guidance or examples of treating Group 2 PH patients, and thus that a skilled artisan would have to engage in undue experimentation to practice the full scope of the claimed invention (*i.e.*, treating Group 2 PH patients).

Liquidia further argues that, even if the district court's construction of "treating pulmonary hypertension" as not requiring safety was proper, the claims of the '793 patent would still not be enabled because any changes in hemodynamics caused by inhalation of treprostinil would provide no benefit to Group 2 PH patients.  Thus, a skilled artisan would not conclude that the '793 patent claims are enabled to the full scope of the claimed invention.

United Therapeutics responds that the district court did not err in concluding that Liquidia failed to show a lack of enablement.  It contends that Liquidia failed to show by clear and convincing evidence that enablement would require undue experimentation with respect to Group 2 PH.

Further, even if the specification fails to describe how to treat Group 2 PH patients with treprostinil, United Therapeutics asserts, claims are not required to carve out all possible inoperative embodiments in a claim in order to avoid that claim being found not to be enabled.  United Therapeutics asserts that if a skilled artisan has the information to limit the claims to operative embodiments, then the claims are not invalid.  Here, United Therapeutics asserts, the skilled artisan has that information.

Liquidia also challenges the district court's finding that the claims are supported by an adequate written description. Liquidia argues that the '793 patent never describes treating Group 2 PH patients with inhaled treprostinil, but only Group 1, 3, and 4 patients, all of whom have precapillary PH. Thus, Liquidia contends, there is no information in the '793 patent specification sufficient for a skilled artisan to conclude that the inventors were in possession of a method of treating Group 2 PH patients with inhaled treprostinil.

Liquidia further argues that, even if the district court correctly construed "treating pulmonary hypertension" not to require a showing of safety, the claims still are not supported by written description because vasodilation of the pulmonary vasculature is not effective in treating Group 2 PH patients. Thus, Liquidia contends, a skilled artisan would have understood that the inventors did not invent or possess a method of treating Group 2 PH patients.

United Therapeutics responds that the district court did not clearly err in finding the claims of the '793 patent supported by an adequate written description. United Therapeutics argues that Liquidia's written description arguments fail for largely the same reasons as its enablement arguments. In particular, United Therapeutics asserts that the court did not err in holding that a skilled artisan would understand a therapeutically effective dose to be one that improves a patient's hemodynamics. United Therapeutics further contends that, although a physician may or may not decide to administer treprostinil to a Group 2 PH patient, that decision would be informed by FDA guidance, not the written description in the specification.

We agree with United Therapeutics that the claims are adequately enabled as they were construed by the district court. The specification of the '793 patent sufficiently enables the scope of the claims. *See, e.g.*, '793 patent at col. 7 ll. 7–67 (providing details on administration,

concentrations, and dosages of inhaled treprostinil for treating patients with pulmonary hypertension); *id.* col. 9 ll. 5–49 (describing an open label study upon acute safety, tolerability, and hemodynamic effects of inhaled treprostinil delivered over the course of a few seconds). While the court credited expert testimony concluding that a physician may have safety concerns in treating Group 2 PH patients with treprostinil and other vasodilators, *see Decision*, at 466–67, the court also found that the record demonstrates that the claimed administration of treprostinil vasodilates the pulmonary vasculature and reduces pulmonary blood pressure even in Group 2 PH patients, *id.* at 468. The court properly relied on expert testimony and record evidence to conclude that a skilled artisan would understand that the claimed administration of treprostinil would vasodilate the pulmonary vasculature, improve hemodynamics, and in this way for a single dose, treat a patient's elevated pulmonary blood pressure independent of the type (*i.e.*, group) of pulmonary hypertension patient. *Id.* That was all that the claims require under the district court's construction because, again, the parties do not dispute that a "therapeutically effective single event dose" is defined by "an improvement in a patient's hemodynamics (reduced PAP or PVP)." That a study—administering treprostinil-like prostacyclins to Group 2 PH patients—failed due to increased mortality, yet showed "improvement in a patient's hemodynamics," may be an issue for the FDA. But our focus is on the claimed invention. And on this record, with the district court's claim construction, the claims are adequately enabled.

We also agree with United Therapeutics that the district court did not clearly err in finding that the claims of the '793 patent are supported by an adequate written description. Written description requires that the specification reasonably convey to those skilled in the art that the inventor had possession of the claimed invention as of the filing date. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d

1336, 1351 (Fed. Cir. 2010) (en banc).  As the court noted,
the '793 patent claims require "treating pulmonary hyper-
tension comprising administering . . . a therapeutically ef-
fective single event dose of a formulation containing
treprostinil," *Decision*, at 466–67, and the specification de-
scribes that.  In other words, the specification shows pos-
session for the claimed invention under the district court's
construction.

Liquidia essentially asks us to treat Group 2 PH as a
claimed species within a larger genus (*i.e.*, all five groups
of pulmonary hypertension).  But analogizing a subset of
patients having a variant of a particular disease to tradi-
tional genus and species claims is inapt.  It would be incor-
rect to fractionate a disease or condition that a method of
treatment claim is directed to, and to require a separate
disclosure in the specification for each individual variant of
the condition (here, an individual group of pulmonary hy-
pertension patients) in order to satisfy the enablement and
written description provisions of 35 U.S.C. § 112, unless
these variants are specified in the claims.

Again, because safety and efficacy are not recited in the
claims, we need not deal with Liquidia's arguments.  Dis-
ease-specific treatment requirements are matters for the
FDA and medical practitioners.  They are best suited to
make these determinations because practitioners are in-
formed by the findings of the regulatory agency to avoid
treatment of patients who will not properly respond.  And
every claim to a method of treatment of an ailment has re-
finements.  That is, for any given method of treatment
claim, there may be a subset of patients who would not ben-
efit from or should not take the claimed treatment.  *See*
Oral    Arg.    at    4:28–4:58,    https://oralargu-
ments.cafc.uscourts.gov/default.aspx?fl=22-2217_0503202
3.mp3.  That does not mean that such claims are not suffi-
ciently enabled or supported by written description. A sub-
set of unresponsive patients is not analogous to

unsupported species in a generic claim to chemical compounds.

## C.

We next turn to Liquidia's challenge to the district court's finding that Liquidia was liable for induced infringement. Liquidia argues that it cannot be held liable for induced infringement because the '793 patent was found to be unpatentable in an IPR, and an unpatentable or invalid patent cannot be infringed. To support this assertion, Liquidia cites *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 644 (2015) (stating that if "an act that would have been . . . an inducement to infringe pertains to a patent that is shown to be invalid, there is no patent to be infringed"). Liquidia contends that *Commil* should be read as stating that knowledge of actual unpatentability determined in an IPR precludes having the necessary intent to induce infringement.

United Therapeutics responds that the Board's decision on the '793 patent is not final, and a non-final Board decision does not defeat Liquidia's liability for inducing infringement of the '793 patent. United Therapeutics contends that unpatentability is relevant to infringement liability only once a final adjudication of unpatentability or invalidity rules that there is no such patent to infringe.

We agree with United Therapeutics that the district court did not clearly err in finding that Liquidia induced infringement of the '793 patent. The court did not clearly err in finding that the label on Yutrepia, Liquidia's product, does not need to provide hemodynamic data to constitute inducement of infringement; it merely needs to instruct doctors and patients to administer a therapeutically effective single event dose, which it does. *Decision*, at 462–63. The court also did not clearly err in concluding that United Therapeutics proved that a single administration of Yutrepia will be therapeutically effective, as required by the claims of the '793 patent and constituting inducement.

Liquidia's reliance on *Commil*, 575 U.S. at 632, requires the '793 patent to have been invalidated, but as United Therapeutics argues, the corresponding IPR proceeding of the '793 patent is pending on appeal in this court. A pending, non-final litigation does not negate an intent to infringe that is otherwise supported by evidence. And we have previously held that an IPR decision does not have collateral estoppel effect until that decision is affirmed or the parties waive their appeal rights. *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("[A]n affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions."). Further, as the court noted, the Board's final written decision does not cancel claims; the claims are cancelled when the Director issues a certificate confirming unpatentability, which occurs only after "the time for appeal has expired or any appeal has terminated." 35 U.S.C. § 318(b). The '793 IPR decision thus has no impact here on a finding of induced infringement.

## II. The '066 Patent

### A.

We next turn to Liquidia's assertion on appeal that the district court clearly erred in finding that it infringed claims 1–3 of the '066 patent. Liquidia argues that United Therapeutics failed to meet its burden of proving infringement. In particular, Liquidia argues that United Therapeutics identified the starting batch as the treprostinil salt and the pharmaceutical composition as the bulk powder. Liquidia thus contends that a comparison between the impurities in the treprostinil salt and bulk powder would have been required to establish infringement of claims that require a lowering of impurities.

United Therapeutics responds that the district court did not clearly err in finding that Liquidia infringed claims 1–3 of the '066 patent. United Therapeutics contends that

the court based its conclusion on well-supported facts in finding that a skilled artisan would understand the relevant impurities to be those generated during the alkylation and hydrolysis steps used to create the starting batch of treprostinil.

We need not evaluate this argument that claims 1–3 of the '066 patent are not infringed, because Liquidia correctly argues that the district court did not clearly err in finding those claims invalid as anticipated by Moriarty. *See* Part II.B. Because unpatentable or invalid claims cannot be infringed, *Commil*, 575 U.S. at 644 ("To say that an invalid patent cannot be infringed . . . is in one sense a simple truth, both as a matter of logic and semantics."), the issue of infringement of claims 1–3 of the '066 patent has been rendered moot.

## B.

Accordingly, we forthwith turn to United Therapeutics' argument on cross-appeal concerning the validity of claims 1–3. United Therapeutics argues that Moriarty does not teach the purification of treprostinil through salt formation and discloses no information on specific alkylation and hydrolysis impurities. United Therapeutics argues that it added the relevant impurities claim language to overcome validity challenges raised during prosecution, and the court failed to recognize the structural features that are imparted by the claimed salt-formation purification. United Therapeutics further contends that Moriarty discloses treprostinil with a purity of 99.7%, which does not establish that the product of Moriarty had the same level of alkylation or hydrolysis impurities of the claimed product.

Liquidia responds that the district court did not err in finding that claims 1–3, 6, and 9 of the '066 patent are anticipated by Moriarty. Liquidia argues that the claimed composition in Moriarty is the same as the claimed

composition in the '066 patent, and that United Therapeutics demonstrated no clear error in the court's findings.

We agree with Liquidia that the district court did not clearly err in finding that claims 1–3, 6, and 9 are invalid as anticipated by Moriarty. The claims of the '066 patent are directed to a pharmaceutical composition comprising, *inter alia*, treprostinil, prepared by alkylation and hydrolysis steps. It is thus referred to as a product-by-process claim. But a product-by-process claim is a product claim, even if claimed by a process by which it can be made. The claims also recite the presence of impurities.

We conclude that the district court did not clearly err in finding that these claims are anticipated by the Moriarty reference, which discloses treprostinil with impurities. The specification of the '066 patent discloses an impurity level of 99.7%–99.9%, '066 patent col. 14, table, whereas Moriarty similarly discloses the synthesis of impure treprostinil, designated in the publication as UT-15, having 99.7% purity, Moriarty at 1890, 1892, 1902. As these claims are product claims, they are anticipated by a disclosure of the same product irrespective of the processes by which they are made. Further, United Therapeutics did not provide any expert or fact witness rebutting Liquidia's expert's opinions or providing testimony identifying any structural or functional differences between the Moriarty treprostinil and the claimed treprostinil. *Decision*, at 456. The court thus did not err in finding that claims 1–3, 6, and 9 of the '066 patent are anticipated by Moriarty.

## C.

United Therapeutics also argues on cross-appeal that the district court clearly erred in finding that Liquidia does not infringe claims 6 and 8 of the '066 patent. United Therapeutics contends that claims 6 and 8 require that the treprostinil salt be stored at ambient temperature, and that Liquidia stores treprostinil salt at ambient temperature during production, thus infringing the claims. United

Therapeutics contends that Liquidia's promise not to make its product with batches of treprostinil salt that were stored at ambient temperature is insufficient to avoid a finding of infringement.

United Therapeutics also contends that the district court erred in construing the term "storage" in claims 6 and 8 as excluding storage during manufacturing but including storage during shipment of the product. United Therapeutics further contends that Liquidia also infringes claim 8 through ambient storage that occurs after the composition recited in claims 1–6 is prepared and before the drug product of claim 8 is prepared.

Liquidia responds that the district court did not clearly err in finding that it does not infringe claims 6 and 8 of the '066 patent. In particular, Liquidia notes that the court based its findings of non-infringement on several clear findings of fact, including that (1) Liquidia's NDA requires the treprostinil salt to be stored at a temperature of 2–8°C; (2) Liquidia asserted that it would not use treprostinil salt batches that have been stored at ambient temperature; and (3) Liquidia begins preparing a pharmaceutical product during step 1 of its production process. Liquidia further asserts that the NDA storage specifications are regulatory requirements, not mere recommendations or promises.

Liquidia further responds that the district court did not err in its construction of the term "storage." Liquidia asserts that United Therapeutics mischaracterizes Liquidia's production process, and that its production process is a single production process, not two stages separated by a period of ambient storage.

We agree with Liquidia that the district court did not clearly err in finding that it does not infringe claims 6 and 8 of the '066 patent. The court credited Liquidia's representations to the FDA that it would store treprostinil sodium between 2°C and 8°C. The court also found that United Therapeutics provided no evidence showing that

UNITED THERAPEUTICS CORPORATION v.                    23
LIQUIDIA TECHNOLOGIES, INC.

Liquidia used ambient-temperature-stored batches of treprostinil in its manufacturing process in making a pharmaceutical composition as required by claim 6 or claim 8. Without a showing that Liquidia stores treprostinil at ambient temperature, there can be no infringement of the claims.

CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the United States District Court for the District of Delaware is affirmed.

**AFFIRMED**

COSTS

No costs.

# EXHIBIT 3

UNITED STATES PATENT AND TRADEMARK OFFICE

―――――――――――――――

BEFORE THE PATENT TRIAL AND APPEAL BOARD

―――――――――――――――

LIQUIDIA TECHNOLOGIES, INC.,
Petitioner,

v.

UNITED THERAPEUTICS CORPORATION,
Patent Owner.

―――――――――――――――

Inter Partes Review No. IPR2021-00406
U.S. Patent No. 10,716,793 B2

―――――――――――――――

**PATENT OWNER'S REQUEST FOR REHEARING**

IPR2021-00406
U.S. Patent No. 10,716,793 B2

# TABLE OF CONTENTS

I.    Introduction and Background ........................................................... 1

II.   Legal Standard ................................................................................ 3

III.  Argument ........................................................................................ 3

      A.    Liquidia failed to demonstrate that the Voswinckel abstracts are
            prior art ................................................................................... 4

      B.    The Board's conclusion that Voswinckel JESC and Voswinckel
            JAHA are prior art conflicts with settled legal principles .................... 7

      C.    But for the Board's legal error, the challenged claims would
            have been upheld ............................................................... 12

IV.   Conclusion ................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases:**

*Argentum Pharm. LLC v. Research Corp. Tech., Inc.*,
　　IPR2016-00204, Paper 19 (P.T.A.B. May 23, 2016) ........................................11

*Blue Calypso, LLC v. Groupon, Inc.*,
　　815 F.3d 1331 (Fed. Cir. 2016) ....................................................................7, 8

*Caterpillar Inc. v. Wirtgen Am., Inc.*,
　　IPR2017-02185, Paper 48 (P.T.A.B. July 11, 2019) ..........................................3

*Constant v. Advanced Micro-Devices, Inc.*,
　　848 F.2d 1560 (Fed. Cir. 1988) .........................................................................7

*Handi Quilter, Inc. v. Bernina International AG*,
　　IPR2013-00364, Paper 39 (P.T.A.B. Sept. 25, 2014)........................................12

*Kyocera Wireless Corp. v. ITC*,
　　545 F.3d 1340 (Fed. Cir. 2008) .........................................................................8

*In re Lister*,
　　583 F.3d 1307 (Fed. Cir. 2009) ....................................................................2, 8

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
　　303 F.3d 1294 (Fed. Cir. 2002) .........................................................................1

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
　　929 F.3d 1363 (Fed. Cir. 2019) .......................................................................10

*Teoxane S.A. v. Allergan*,
　　IPR2017-01906, Paper 15 (P.T.A.B. Mar. 9, 2018)..................................2, 7, 10

**Statutes:**

35 U.S.C. §102(a) ..............................................................................6, 7, 12, 13

35 U.S.C. §102(b) ............................................................. 1, 2, 6, 8, 9, 10, 11, 12

**Regulations:**

37 C.F.R. §42.71 ...................................................................................................3

4855-7660-5999.1

37 C.F.R. §42.104(b)(2)............................................................................................12

**Other Authorities:**

M.P.E.P. §2127 ........................................................................................................8

4855-7660-5999.1

Patent Owner United Therapeutics Corporation (UT) respectfully requests that the Board reconsider its Final Written Decision (Paper 78) (FWD) finding claims 1–8 of U.S. Patent No. 10,716,793 unpatentable.

## I.    Introduction and Background

The Board ruled that all eight claims of the '793 patent are obvious, relying in part on two references: Voswinckel JESC (Ex. 1007) and Voswinckel JAHA (Ex. 1008). The Final Written Decision concluded that these references qualify as prior art under pre-AIA 35 U.S.C. §102(b) because research aids made them publicly accessible. FWD at 8–12. But that prior-art determination rests on a substantial legal error, because the supposed research aids were published *after* the critical §102(b) date of May 15, 2005.

Public accessibility prior to the critical date is the defining feature of a §102(b) "printed publication." *See, e.g.*, *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). The Board did not find that Liquidia proved that either Voswinckel abstract was *itself* publicly accessible, such as if they had been indexed and catalogued in public libraries more than a year before the priority date. Instead, the Board reasoned that two references the Board described as "research aids"—Ghofrani (Ex. 1010) and Sulica (Ex. 1104)—provided a skilled artisan with a roadmap to the Voswinckel abstracts. FWD at 10–12.

That ruling contravenes settled legal principles. Where a research aid is relied

upon as a "roadmap" to establish public accessibility to a skilled artisan under §102(b), the date of public accessibility is *the date of the research aid*, not *the date of the underlying reference. See In re Lister*, 583 F.3d 1307, 1312 (Fed. Cir. 2009) (holding that the date of accessibility through a searchable index was the effective date of an asserted reference). That is because "[t]he touchstone of public accessibility is whether an ordinary artisan exercising reasonable diligence would have been able to locate the document prior to the critical date." *Teoxane S.A. v. Allergan*, IPR2017-01906, Paper 15, at 11 (P.T.A.B. Mar. 9, 2018) (quotation marks omitted). Ghofrani was clearly published within a year of the priority date (*see* Ex. 1121, at 1; Paper 55, at 9), and Liquidia provided no evidence that Sulica was published outside that one-year window (*see* Ex. 1104, at 1; Paper 55, at 9). Thus, even assuming Ghofrani and Sulica provide a skilled artisan with the requisite "roadmap" to find the Voswinckel abstracts (*see* FWD at 11), neither could have led the skilled artisan to the relevant abstract more than one year before the priority date. The Final Written Decision erred in failing to address this critical distinction and allowing Liquidia to use research aids published within a year of the applicable date to establish the Voswinckel abstracts as publicly accessible more than a year before the applicable date.

With this error corrected, the obviousness conclusion falls apart. Aside from Voswinckel JESC and Voswinckel JAHA, the Board found *no* evidence that either

2

the claimed drug quantity (15 to 90 micrograms) or the claimed delivery duration (one to three breaths) was disclosed in the prior art. None of Liquidia's other asserted obviousness grounds are viable, either. Each of the other grounds relies on Voswinckel JESC, Voswinckel JAHA, or another reference that the Board concluded does not constitute prior art. *See* FWD at 3–4.

For these reasons, the Board should grant rehearing, vacate the Final Written Decision, and issue a new decision upholding the challenged claims.

## II.    Legal Standard

A party dissatisfied with a final written decision of the Board may file one rehearing request, without prior authorization, within 30 days of the Board's decision. 37 C.F.R. §42.71. The requesting party "must specifically identify all matters the party believes the Board misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, a reply, or a sur-reply." *Id.* The Board reviews its decision for abuse of discretion, which occurs when "the decision is based on an erroneous interpretation of law, if a factual finding is not supported by substantial evidence, or if an unreasonable judgment is made in weighing relevant factors." *Caterpillar Inc. v. Wirtgen Am., Inc.*, IPR2017-02185, Paper 48, at 2 (P.T.A.B. July 11, 2019).

## III.    Argument

A long-established legal principle governs the Voswinckel abstracts' status as

prior art:  if a skilled artisan must rely on a research aid to provide a roadmap to access an underlying reference, then the *underlying reference* cannot have been publicly accessible until the *research aid* was.  The Final Written Decision contravenes this principle by allowing Liquidia to use two later-published research aids (Ghofrani and Sulica) to smuggle those earlier, otherwise-inaccessible abstracts into the record as prior art.  But for this legal error, the Board would have been required to uphold the asserted claims.

## A.    Liquidia failed to demonstrate that the Voswinckel abstracts are prior art

Liquidia's Petition contained only the most conclusory evidence that Voswinckel JESC and Voswinckel JAHA were prior art.  The Petition asserted that the abstracts were published in 2004 (*see* Paper 2, at 22, 24), and an accompanying expert declaration speculated that the abstracts likely would have been received, catalogued, and indexed by libraries by late 2004—without providing any evidence that they actually were.  *See* Ex. 1036 ¶¶59–75.

As UT explained in the Patent Owner Response, this cursory showing did not come close to satisfying Liquidia's burden of proof.  Liquidia's Petition failed to demonstrate that any library actually received either abstract, let alone more than a year before the priority date.  *See* Paper 29, at 12–14.  And the Petition further failed to show that any library had indexed or catalogued the abstracts or even the supplements in which they appeared before that date.  *See id.* at 14–18.

4

Evidently recognizing the threadbare nature of its prior submissions, Liquidia shifted stances and sought to rely on new evidence and arguments in its Reply.  As relevant here, Liquidia argued for the first time that Voswinckel JESC "was cited in the June 2005 Ghofrani article in the journal *Herz*," and that a skilled artisan "would have relied on Ghofrani's disclosures to … access the JESC abstract."  Paper 44, at 3–4.  Liquidia advanced effectively the same argument for Voswinckel JAHA, contending that a skilled artisan "would have been able to access JAHA with Sulica as a research aid."  *Id.* at 7–8.  Finally, Liquidia suggested that Sulica's citation to Voswinckel JAHA itself demonstrated public accessibility of that reference, because it showed that "[t]he Sulica authors were able to access" it.  *Id.* at 7.

UT explained in its Surreply that Liquidia failed to show that either Voswinckel abstract was prior art.  Instead, Liquidia's "belated argument establishe[d], at best, that a POSA may have been able to find the Abstract as of the date the alleged 'research aids' became available."  Paper 55, at 9.  Crucially, "Ghofrani bears a July 2005 date-stamp, while Sulica shows only the year 2005" without any actual evidence demonstrating the March 2005 date that Liquidia asserted.  *Id.* (citations omitted); *see id.* at 9 n.4.

UT further explained that the mere fact that Sulica and Ghofrani contain citations to the Voswinckel abstracts cannot establish that the abstracts were publicly accessible to persons of ordinary skill in the art more than a year before the priority

date. The Sulica and Ghofrani authors are not persons of ordinary skill with respect to the Voswinckel abstracts because the Voswinckel abstracts' authors had a close affiliation with the supposed research aids' authors: Voswinckel JESC and the relevant portions of Ghofrani shared coauthors (Dr. Voswinckel and Dr. Seeger), Paper 29, at 46–47 (citing Ex. 2066 at 3, ¶7); Paper 55, at 10, and Dr. Sulica was a principal investigator in the TRIUMPH study group (there, too, along with Dr. Seeger) who participated in the clinical trials reported in the Voswinckel publications, Paper 55, at 10. Thus, the fact that the authors of Sulica and Ghofrani had access to and could cite the Voswinckel abstracts, given their affiliation with those abstracts, is irrelevant to whether a person of ordinary skill could have publicly accessed them, much less accessed them more than a year before the priority date. *See* Paper 55, at 10.

As UT explained, "if the Abstracts only became publicly accessible (via these alleged 'research aids') after May 15, 2005, they do not qualify as prior art under 35 U.S.C. §102(b)." *Id.* at 10. "And if the Abstracts are not Section 102(b) prior art, they are not prior art at all because they are not 'by another' under Section 102(a), given Patent Owner's showing that the subject matter of both Abstracts is the

inventors' own work." *Id.*[1]

## B.    The Board's conclusion that Voswinckel JESC and Voswinckel JAHA are prior art conflicts with settled legal principles

The Board erroneously concluded that Voswinckel JESC and Voswinckel JAHA were prior art.  According to the Final Written Decision, because "both the Ghofrani article and the Sulica article" cite the Voswinckel abstracts, they are research aids that serve as "roadmaps" to establish public accessibility of those abstracts.  FWD at 11–12 (citing *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1350 (Fed. Cir. 2016)).  That conclusion conflicts with settled legal principles.

As the Board has previously explained, "[t]he touchstone of public accessibility is whether an ordinary artisan exercising reasonable diligence would have been able to locate the document prior to the critical date." *Teoxane*, IPR2017-01906, Paper 15, at 11 (quotation marks omitted).  Indeed, the decisions of both the

---

[1] This showing was uncontested.  Liquidia did not object to or move to exclude any of Exhibits 2003, 2061, and 2071, which were first filed with the Patent Owner Response (Paper 29) and later cited in the Surreply (Paper 55, at 10) to show that the abstracts were not §102(a) prior art.  Furthermore, Liquidia declined the opportunity to depose Dr. Seeger in the IPR in relation to Exhibits 2003 and 2071 following their submission with the Patent Owner Response, and it made no request to submit any rebuttal evidence on this issue following the Surreply.

Federal Circuit and this Board have repeatedly underscored the point: what matters is public accessibility as of the critical date. *See, e.g.*, *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1988) ("The statutory phrase 'printed publication' has been interpreted to mean that before the critical date the reference must have been sufficiently accessible to the public interested in the art[.]"); *In re Lister*, 583 F.3d 1307, 1312 (Fed. Cir. 2009) (analyzing whether a reference was "publicly accessible as of the critical date"); *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350 (Fed. Cir. 2008) (similar).

These principles apply with equal force regardless of whether a reference is publicly accessible on its own or instead becomes publicly accessible only by way of a "research aid." As the Federal Circuit has explained, "the presence of a 'research aid' can … establish public accessibility" by "provid[ing] a skilled artisan with a sufficiently definite roadmap leading to … the potentially invalidating reference." *Blue Calypso*, 815 F.3d at 1350. By simple logic, that roadmap can "lead[] to … the potentially invalidating reference" only if and when it becomes publicly accessible—before then, there is nothing to guide the skilled artisan to the underlying reference. *See Lister*, 583 F.3d at 1312 (for a reference that becomes publicly accessible through a searchable index, the relevant date is the date of indexing); *cf.* M.P.E.P. §2127 ("An abandoned patent application may become evidence of prior art only when it has been appropriately disclosed, as, for example,

when the abandoned patent application is referenced in the disclosure of another patent, in a publication, or by voluntary disclosure[.]" (brackets omitted)).  The key issue in this case is therefore when *the research aid* providing the roadmap became publicly accessible, and whether that was before the §102(b) critical date.

The Final Written Decision did not address that question and overlooked UT's arguments doing so.  Even assuming that "the Ghofrani article and the Sulica article provide roadmaps directing a person of ordinary skill in the art … straight to Voswinckel JESC or Voswinckel JAHA" (FWD at 11–12), the question is when those roadmaps became available to an ordinary artisan in this field.  The answer: not before the critical May 15, 2005, §102(b) date.  Ghofrani is an article from the June 2005 issue of *Herz*; the exhibit in the record bears a July 2005 date-stamp.  *See* Ex. 1121, at 1.  And Sulica bears a "2005" date with no indication of when in 2005 it was published—much less when it became publicly accessible.[2]  *See* Ex. 1104, at 2.

---

[2] Liquidia asserted that Sulica is a "March 2005 article" (Paper 44, at 7), and the Final Written Decision quoted that statement (FWD at 11).  But there is no evidence that it appeared in any publication in March 2005.  The document itself, Exhibit 1104, only references the year "2005" and offers no other date information.  Paper 55, at 9.  And there was no other evidence supporting Liquidia's March 2005 date.

In short, neither of the alleged research aids were shown to have been publicly accessible before the critical §102(b) date.  And Liquidia essentially conceded this point—it argued, for example, that Ghofrani would have provided a roadmap to an ordinary skilled artisan to locate Voswinckel JESC "*before May 15, 2006*."  Paper 44, at 4 (emphasis added); *accord id.* at 7–8 (arguing that Sulica would have allowed an ordinary skilled artisan exercising reasonable diligence to access Voswinckel JAHA "*before 2006*" (emphasis added)).  In nevertheless concluding that Sulica and Ghofrani establish the Voswinckel abstracts as prior art under §102(b), the Board effectively blessed an end-run around the principle that a reference must be publicly accessible before the critical date.  That legal error infected the Board's decision, and warrants rehearing.

Furthermore, to the extent the Board concluded that Ghofrani and Sulica's mere citations to the Voswinckel abstracts demonstrated that those references were publicly accessible because it demonstrated that the authors of Ghofrani and Sulica were able to access the abstracts—as Liquidia argued in its Reply (Paper 44, at 7)— that conclusion is equally erroneous.  Section 102(b) requires prior-art references to be "publicly accessible" to an "ordinary" skilled artisan.  *Teoxane*, IPR2017-01906, Paper 15, at 11; *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1369 (Fed. Cir. 2019) (whether "persons of ordinary skill in the art" were able to locate the abstracts through the exercise of "reasonable diligence").  The authors of

10

Ghofrani and Sulica were not ordinary skilled artisans with respect to the Voswinckel abstracts. Rather, they were coauthors of one Voswinckel abstract (citing their own prior work) and a principal investigator of the team conducting the clinical work described in the other abstract; they therefore would naturally have known about (and had access to) those documents irrespective of their public accessibility. Paper 55, at 10.

In other words, if a petitioner is relying on a research aid to establish public accessibility of a reference by a hypothetical person of ordinary skill, it is not enough for a petitioner to point to the mere existence of a citation in a research aid authored by someone affiliated with the cited reference. Doing so simply demonstrates that the research aid's author was aware of the work he or she contributed to—not that the public (or an ordinary skilled artisan) had access to it. *Argentum Pharm. LLC v. Research Corp. Tech., Inc.*, IPR2016-00204, Paper 19 at 11 (P.T.A.B. May 23, 2016) (concluding that references citing a disputed prior-art thesis, authored either by the student who wrote the thesis or by the student's thesis advisor, only indicated that the authors "had personal knowledge regarding the cited thesis").[3] Nor, of

---

[3] Although the Board mentioned Liquidia's argument that Voswinckel JESC was publicly presented, *see* FWD at 10, the Board did not adopt that argument, and Liquidia offered no evidence of what was presented or to whom. Nor did Liquidia

course, does it demonstrate that an affiliated author who published *after* the critical §102(b) date had access to the reference *before* that date.

### C.     But for the Board's legal error, the challenged claims would have been upheld

For the foregoing reasons, the Board erred in concluding that Voswinckel JESC and Voswinckel JAHA are prior art under §102(b).   And without that erroneous conclusion, the Board's decision cannot stand.

Nor would there have been any basis for concluding that the two Voswinckel abstracts are prior art under §102(a).  First, it would be improper for the Board to entertain the Voswinckel abstracts as §102(a) prior art because the Petition alleges them only to be §102(b) art. *Compare* Paper 2, at 22, 24 (addressing the abstracts and identifying §102(b)), *with id.* at 25, 27 (addressing Ghofrani and Voswinckel 2006 as prior art under §102(a)).  The Board has held that belated conversion from §102(a) to §102(b) is not permitted.  *See Handi Quilter*, Paper 39, at 6; *see also SAS Inst. v. Iancu*, 138 S. Ct. 1348, 1356 (2018) (holding that an *inter partes* review must

---

anywhere argue or explain how any public presentation could have served as a "research aid" that establishes any specific date of public accessibility sufficient to render JESC a §102(b) reference, especially given that the only reference of record which actually cites JESC (Ghofrani) was published less than a year before the priority date.

proceed "in accordance with or in conformance to the petition"); 37 C.F.R. §42.104(b)(2) (providing that a petition must state "[t]he specific statutory grounds under 35 U.S.C. 102 or 103 on which the challenge to the claim is based and the patents or printed publications relied upon for each ground."). Second, even if Liquidia had raised a §102(a) argument, the argument would have failed on the merits. Section 102(a) applies only to printed publications by "others"—*i.e.*, individuals other than the inventors. As already explained, Voswinckel JESC and Voswinckel JAHA are not by "others": they reflect the inventors' own work. *See* Paper 55, at 10; Ex. 2003 ¶27; Ex. 2061 ¶¶12–13; Ex. 2071¶¶6–8; *supra*, pp. 5–6, 10.

There is also no basis for adopting any of the other obviousness grounds in the Petition. Ground 2 also relies on Voswinckel JESC. FWD at 3. Ground 3 relies on Ghofrani, which the Board correctly found not to constitute prior art because it was not by "others." *See id.* at 37–40. Ground 4 relies on Voswinckel JESC and Ghofrani. *Id.* at 3. And Grounds 5 and 6 rely on Voswinckel 2006, *see id.* at 3–4, which the Board correctly found not to constitute prior art because it was not by others, *see id.* at 40–41.

In short, the Board's erroneous conclusion that Ghofrani and Sulica could establish public accessibility—without any proof that those sources provided a roadmap to the Voswinckel abstracts before the critical date—was an outcome-

determinative error.

## IV.    Conclusion

The Board should grant rehearing, vacate its prior final written decision, and enter a revised final written decision confirming that Liquidia has not shown that claims 1–8 of the '793 patent are unpatentable.

August 18, 2022                              Respectfully submitted.

                                             /Stephen B. Maebius/
                                             Stephen B. Maebius (Reg. No. 35,264)
                                             FOLEY & LARDNER LLP
                                             3000 K Street, NW
                                             Washington, DC 20007
                                             Telephone: (202) 672-5569
                                             Facsimile: (202) 672-5399

                                             *Counsel for Patent Owner*
                                               *United Therapeutics Corporation*

14

# CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing "Patent Owner's

Request for Rehearing" was served on August 18, 2022, via e-mail on the following

counsel of record for the Petitioner:

> zLiquidiaIPR@cooley.com
> ielrifi@cooley.com
> emilch@cooley.com
> dkannappan@cooley.com
> ssukduang@cooley.com

August 18, 2022

/Stephen B. Maebius/
Stephen B. Maebius (Reg. No. 35,264)
FOLEY & LARDNER LLP
3000 K Street, NW
Washington, DC 20007
Telephone: (202) 672-5569
Facsimile: (202) 672-5399

*Counsel for Patent Owner*
  *United Therapeutics Corporation*

# EXHIBIT 4

Trials@uspto.gov

571.272.7822

Paper No. 80

Filed: August 22, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

LIQUIDIA TECHNOLOGIES, INC.,
Petitioner,

v.

UNITED THERAPEUTICS CORPORATION,
Patent Owner.

_____

IPR2021-00406
Patent 10,716,793

_____

Before Jamilah Sultan, *Trial Paralegal*

NOTIFICATION OF RECEIPT OF POP REQUEST

The Office has received a request for Precedential Opinion Panel (POP) review of an issue raised in this case. *See* Ex. 3003. The request is under review. The Office will provide another notification after a decision on the request has been made.

IPR2021-00406
Patent 10,716,793

For PETITIONER:

Ivor R. Elrifi
Erik B. Milch
Deepa Kannappan
Sanya Sukduang
Lauren Krickl
Douglas Cheek
Jonathan Davies
COOLEY LLP
ielrifi@cooley.com
emilch@cooley.com
dkannappan@cooley.com
ssukduang@cooley.com
lkrickl@cooley.com
dcheek@cooley.com
jdavies@cooley.com

For PATENT OWNER:

Stephen B. Maebius
George Quillin
Jason N. Mock
Michael Houston
FOLEY & LARDNER LLP
smaebius@foley.com
gquillin@foley.com
jmock@foley.com
mhouston@foley.com

Shaun R. Snader
UNITED THERAPEUTICS CORP.
ssnader@unither.com

Douglas Carsten
April E. Weisbruch
Judy Mohr, Ph.D.
Jiaxiao Zhang
Mandy Kim
Arthur Dykhuis
Amy Mahan

IPR2021-00406
Patent 10,716,793

MCDERMOTT WILL & EMERY LLP
dcarsten@mwe.com
aweisbruch@mwe.com
jmohr@mwe.com
jazhang@mwe.com
mhkim@mwe.com
adykhuis@mwe.com
amahan@mwe.com

# EXHIBIT 5

No. 2022-2217

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

————————————

**UNITED THERAPEUTICS CORPORATION,**

*Plaintiff-Appellee,*

**v.**

**LIQUIDIA TECHNOLOGIES INC.,**

*Defendant-Appellant,*

————————————

On Appeal from a Judgment of the United States District Court
for the District of Delaware, No. 20-cv-755 (Andrews, J.)

————————————

## UNITED THERAPEUTICS' OPPOSITION TO LIQUIDIA'S
## MOTION TO EXPEDITE BRIEFING AND ORAL ARGUMENT

————————————

The Court should deny Liquidia's request to drastically shorten
United Therapeutics' (UT's) briefing deadlines and to expedite the oral
argument in this appeal (and two other appeals that have been
designated as companion cases). Liquidia has failed to establish any
reason—let alone good cause—for that extraordinary relief. The harm it
asserts is one that all losing Hatch-Waxman defendants face: an order
under 35 U.S.C. §271(e)(4)(A) setting the earliest date on which the FDA
may approve Liquidia's proposed product. This routine scenario does not

justify relief that is "not routinely granted." Fed. Cir. R. 27, Practice Note.

Liquidia asserts that this case nevertheless warrants expedited consideration, but the central premises of its argument are flawed—if not misleading. On Liquidia's telling, the PTAB has finally invalidated UT's '793 Patent, and the district court's decision finding that patent valid and infringed conflicts with both precedent and the PTAB's decision. None of that is correct.

First, the PTAB's final written decision will not take effect—and the Patent Office will not cancel any claims of the '793 Patent—unless and until (1) the PTAB denies UT's pending request for rehearing and (2) any future appeal from that IPR decision "has terminated" in Liquidia's favor. 35 U.S.C. §318(b). Second, the one decision that Liquidia cites for the proposition that a not-yet-final invalidity ruling in the PTAB compels a finding of noninfringement in district court says no such thing. On the contrary, that case makes clear that validity and infringement are two entirely separate inquiries. Third, there is no "conflict" between the district court and PTAB decisions because each considered entirely different invalidity arguments—a consequence of Liquidia's decision to

abandon its obviousness arguments midway through the district-court trial and pursue only enablement and written-description challenges there. In other words, the issue that Liquidia's motion focuses on, the obviousness of the '793 Patent, will not arise in the three appeals that are currently pending in this Court. Obviousness will come up, if at all, only in a potential future appeal from the PTAB's final written decision on the '793 Patent—which no party can even bring until the PTAB acts on UT's rehearing request.

Moreover, the prejudicial impact of Liquidia's requested schedule on UT is particularly inappropriate because Liquidia's request flows from its own strategic decision to pursue an IPR on the '793 Patent and abandon those arguments in the district-court litigation. Liquidia knew when it made that choice, well after the '793 Patent was asserted, that the IPR could not result in cancellation of the '793 Patent until after any appeals from the PTAB's decision. *See, e.g.*, D. Del. Dkt. No. 428, at 1-2; Liquidia Mot. Ex. 3 (Trial Op.) at 36. Liquidia also knew that, if the district court found the '793 Patent valid and infringed, it would have no choice but to order the effective date of final FDA approval of Liquidia's product to be a date "which is not earlier than the date of the expiration"

of that patent.  35 U.S.C. §271(e)(4)(A).  UT should not have to prepare its briefs in half-time simply because Liquidia made a strategic choice to pursue an IPR instead of presenting its anticipation and obviousness defenses in district court.

Liquidia is free to self-expedite its own briefs, and UT takes no position on when the Court should schedule oral argument—UT will appear at the Court's convenience.  But Liquidia has not come close to justifying the compression of UT's briefing schedule.

## BACKGROUND AND PROCEDURAL HISTORY

UT brought this patent-infringement suit because Liquidia plans to market an inhalation powder that will infringe three of UT's patents: the '066, '901, and '793 Patents.  Liquidia Mot. at 1; Trial Op. at 1.  When seeking FDA approval to market that product, Liquidia certified that UT's patents were invalid and not infringed, triggering this litigation in accordance with the Hatch-Waxman framework.  Liquidia Mot. at 1-2; Trial Op. at 2.  Liquidia advanced its invalidity and noninfringement arguments in the district court, *see, e.g.*, D. Del. Dkt. No. 365, Ex. 3, and also brought parallel IPRs challenging all three patents, *see* Nos. IPR2020-00769, IPR2020-00770, IPR2021-00406.  The PTAB instituted

reviews on the '901 and '793 Patents but declined to institute review of the '066 Patent.

The PTAB concluded that claims 1-5, 8, and 9 of the '901 Patent were obvious, while claims 6-7 were not. Liquidia Mot. Ex. 5 ('901 FWD) at 2. Both parties have appealed the PTAB's final written decision. In district court, following claim construction, UT stipulated to noninfringement of the asserted '901 Patent claims. Liquidia Mot. Ex. 6 (Stipulation). Thus, the '901 Patent does not currently have any effect on Liquidia's ability to market its product.

With respect to the '793 Patent, Liquidia's invalidity defenses in the district court originally included obviousness and anticipation arguments. *See* D. Del. Dkt. No. 365, Ex. 3, at 150-185 (advancing these arguments in final pretrial submissions). But then, on the second day of trial, Liquidia made a strategic choice: it dropped these arguments, leaving them to be litigated *solely* in the parallel IPR proceeding, and limited its district-court invalidity defenses on the '793 Patent to written-description and enablement issues only. *See* Trial Op. at 39-53.

Thereafter, in the '793 Patent IPR, the PTAB concluded that the claims of the '793 Patent are obvious. Liquidia Mot. Ex. 7 ('793 FWD) at

2, 46-47.  UT filed requests for rehearing and for review of that decision by the PTAB's Precedential Opinion Panel.  *See* No. IPR2021-00406, Papers 79-80.  Both requests are still pending.  If they are denied, UT intends to appeal the PTAB's decision to this Court.

Meanwhile, in district court, Judge Andrews found after a four-day bench trial that Liquidia will infringe claims 1, 4, 6, 7, and 8 of the '793 Patent, and that Liquidia had not shown that the patent was invalid for lack of enablement or adequate written description.  Trial Op. at 53. Because Liquidia had abandoned its obviousness challenges in the district-court litigation, the district court made no findings regarding obviousness.  The district court also found that Liquidia had proven that claims 1, 2, 3, 6, and 9 of the '066 patent are invalid; had not proven the invalidity of claim 8; and will not infringe claim 8.  *Id.*

The district court subsequently entered final judgment.  Consistent with 35 U.S.C. §271(e)(4)(A), the court "ordered that the effective date of any final approval by the FDA of Liquidia's [application for its inhaled powder product] shall be a date which is not earlier than the expiration date of the '793 patent."  Liquidia Mot. Ex. 4 (Final Judgment) ¶4. Liquidia appealed the district court's judgment as to the '793 Patent, and

UT cross-appealed the district court's judgment as to the '066 Patent.

## ARGUMENT

"[M]otions to expedite proceedings are not routinely granted," Fed. Cir. R. 27, Practice Note.  Liquidia asserts that it will be harmed without expedited briefing.[1]  But Liquidia has been harmed no more than any other Hatch-Waxman defendant that loses at trial.  Liquidia took advantage of the Hatch-Waxman statutory framework to rely on UT's data and thereby secure abbreviated FDA review of its application and pre-approval district court litigation.  It cannot turn around and argue that a routine element of that same framework—the §271(e)(4)(A) remedy—justifies extraordinary relief.

Nothing about this case justifies departing from the Court's standard practice or imposing shortened deadlines on UT.  Liquidia suggests that, unless the Court indulges Liquidia's request for an expedited schedule, it will be wrongly foreclosed from marketing its

---

[1] Liquidia also suggests that patients will be harmed without expedited briefing, Liquidia Mot. at 3, but that conclusory assertion ignores the fact that patients already have access to treprostinil drugs, including UT's own dry powder inhalation formulation (Tyvaso DPI). Other drugs include injection products (Remodulin and Liquidia's own generic copy), a liquid formulation for inhalation (Tyvaso), and a tablet formulation (Orenitram).

product.  But there is nothing wrong with following the statute that Congress enacted, and Liquidia misrepresents both the effect of the PTAB's '793 Patent final written decision and the differences between that pending case and the ones currently on appeal before the Court. Moreover, Liquidia's manufactured sense of urgency arises from its own actions and strategic choices.  Liquidia remains free to self-expedite its own briefs, but the Court should deny Liquidia's motion.

## I.    The PTAB's final written decision regarding the '793 Patent is irrelevant to this appeal and its briefing schedule.

Liquidia's motion rests on three premises: that the PTAB has *already* invalidated the '793 Patent; that the Supreme Court's decision in *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632 (2015), somehow compels the district court to find noninfringement; and that the district court's decision in this case "conflict[s]" with the PTAB's final written decision on the '793 Patent.  Liquidia Mot. at 4.  Liquidia is wrong on all counts. There is no urgency on these facts.

First, it is false to suggest that the PTAB has *already* invalidated the '793 Patent.  *See, e.g.*, Liquidia Mot. at 3 (suggesting that the patent "has been rendered unpatentable"); *id.* at 5 (suggesting that this Court should expedite the appeal "given the PTAB's decision rendering

unpatentable all asserted claims of the '793 patent").  Rehearing is still pending in the PTAB, and even if it were not, the PTAB's final written decision on the '793 Patent is not self-executing.  Instead, 35 U.S.C. §318(b) provides that such a decision takes effect only if affirmed on appeal:

> If the Patent Trial and Appeal Board issues a final written decision under subsection (a) *and the time for appeal has expired or any appeal has terminated*, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

(emphasis added).  This plain language makes clear that the claims of the '793 Patent can be cancelled only if and when the Director issues the required certificate—which can happen only after any appeals are over and only if those appeals are resolved in Liquidia's favor.  *Cf. Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 645 (Fed. Cir. 2011) (explaining, in applying §318's predecessor, that "a determination of patentability [can] occur only after all appeals have terminated").  Until then, the '793 Patent remains valid.

Second, Liquidia incorrectly argues (Mot. at 5) that the district court's "fail[ure] to properly take into account the PTAB's decision"

conflicts with the Supreme Court's decision in *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632 (2015). The very language that Liquidia quotes makes clear why that is wrong. The Supreme Court explained that "if [a] patent is indeed invalid, and shown to be so *under the proper procedures*, there is no liability." 575 U.S. at 644 (emphasis added). As discussed above, the "proper procedures" here include the issuance of an appropriate certificate by the PTO. Liquidia agreed that the PTAB's decision "does not compel [the district court] to enter a decision finding the '793 patent invalid," arguing instead that it makes it impossible to find infringement. D. Del. Dkt. No. 427, at 1. *Commil* itself contradicts Liquidia's argument: "infringement and invalidity are separate matters under patent law." 575 U.S. at 643 ("When infringement is the issue, the validity of the patent is not the question to be confronted."). In other words, as Judge Andrews correctly explained, "[t]he Supreme Court never stated . . . that a PTAB decision invalidating patent claims in an IPR will preclude liability before it becomes final and nonappealable." D. Del. Dkt. No. 433, at 36. Unless and until the PTO Director issues a certificate after all appeals have been exhausted, the patent is valid and remains in force—and an infringer is subject to liability.

10

Third, it is false to suggest that the district court's decision and the PTAB's decision are "conflicting decision[s] on [the] validity" of the '793 Patent. Liquidia Mot. at 4. The two decisions considered entirely different invalidity challenges. In the IPR proceedings, Liquidia argued that the '793 Patent was invalid as obvious or anticipated over several references. *See supra*, p. 5. In the district-court proceedings, Liquidia abandoned those arguments at trial for its own strategic reasons and ultimately pressed *only* written-description and enablement challenges at trial. *See id.* Thus, those written-description and enablement challenges are the *only* invalidity arguments it can make in this appeal.[2] There is simply no "conflict." Liquidia chose to pursue its anticipation and obviousness arguments in a separate forum on a separate timeline.

For all those reasons, the grounds that Liquidia has offered for expediting these appeals do not withstand scrutiny. In the end, Liquidia

---

[2] Even when Liquidia sought a partial stay of judgment in the district court permitting it to launch its infringing product immediately, it never argued that it is likely to prevail in appealing the district court's written-description, enablement, or infringement findings. Instead, it has always hinged its argument on the outcome of the PTAB proceedings, which, as noted above, are still pending. Thus, Liquidia has never even attempted to make a showing that the outcome of *this* appeal is likely to permit Liquidia to launch its infringing product.

simply seeks to expedite for the sake of expediting.

## II. Liquidia's self-inflicted sense of urgency does not justify expediting UT's briefing schedule.

Even if Liquidia could persuade the Court that there is some need for expedited briefing, the Court should not entertain Liquidia's request because the claimed need resulted from Liquidia's own conduct. As discussed, Liquidia chose to pursue an IPR knowing full well that the PTAB's final written decision would not bind the district court unless and until affirmed on appeal. *See supra*, p. 3. Liquidia chose not to move to stay the district court proceedings when IPR was instituted on the '793 Patent. And it chose to abandon its obviousness arguments as to the '793 Patent in the district court, even though it knew that if the court found the '793 Patent infringed and not invalid, UT would be entitled to an order barring final FDA approval of Liquidia's product under 35 U.S.C. §271(e)(4)(A). *See supra*, pp. 3-5.

This Court should not order expedited proceedings—a form of relief that is "not routinely granted," Fed. Cir. R. 27, Practice Note—solely to save Liquidia from the statutory consequences of its own strategic decisions to secure a more favorable burden of persuasion on its obviousness challenges to the '793 Patent. Liquidia is free to file its own

briefs early. But the fact that Liquidia is now unhappy with the consequences of its litigation strategy is no reason to burden UT by artificially compressing UT's briefing deadlines for three (soon-to-be-four) appeals,[3] two of which address a completely different patent.

## III. Liquidia's proposed schedule is prejudicial to UT.

At the very least, the Court certainly should not adopt the lopsided briefing deadlines that Liquidia has proposed. Liquidia has had the district court's decision in hand since August 31. Yet it proposes to have its own opening brief due 45 days later, on October 14, while giving UT only 20 days for its principal and response brief. And it would give UT only 12 days for its cross-appeal reply, of which the first four are Thanksgiving and the holiday weekend.

Liquidia also insists that this appeal must remain on the same schedule as the '901 IPR appeals—seeking to obscure the fact that it has absolutely no basis for expediting the '901 IPR appeals, which concern a patent that is not currently affecting Liquidia's ability to market its product. Even if the Court were to deem expedition appropriate in this

---

[3] UT noticed its cross-appeal from the district court's judgment after Liquidia filed its motion; that cross-appeal will presumably be consolidated with this appeal.

appeal, it certainly should not expedite the '901 IPR appeals just because the Court linked them as companion cases. The Court could simply decouple the appeals and keep the '901 IPR appeals on a normal schedule. It certainly should not force UT to file its opening brief in those appeals barely two weeks from now, and only about three weeks after Liquidia broached the subject of expedition.

## CONCLUSION

The Court should deny Liquidia's motion.

October 4, 2022

Respectfully submitted.

/s/ *Jaime A. Santos*

Shaun R. Snader
UNITED THERAPEUTICS
  CORPORATION
1735 Connecticut Ave., N.W.
Washington, DC 20009
(202) 304-1701

William Jackson
William M. Jay
Jaime A. Santos
GOODWIN PROCTER LLP
1900 N St., N.W.
Washington, D.C. 20036
(202) 346-4000

Douglas H. Carsten
Arthur P. Dkyhuis
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Rd., Suite 250
Irvine, CA 92612
(949) 851-0633

Gerard J. Cedrone
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02128
(617) 570-1000

Adam Burrowbridge
MCDERMOTT WILL & EMERY LLP
500 N. Capitol St., N.W.
Washington, DC 20001
(202) 756-8000

*Counsel for Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-2217 |
| **Short Case Caption** | United Therapeutics Corporation v. Liquidia Technologies, Inc. |
| **Filing Party/Entity** | United Therapeutics Corporation |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/04/2022

Signature: /s/ Jaime A. Santos

Name: Jaime A. Santos

16

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| United Therapeutics Corp. |  | BlackRock Inc. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐    Additional pages attached

17

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| JACK B. BLUMENFELD<br>Morris, Nichols, Arsht & Tunnell LLP | JIAXIAO ZHANG<br>McDermott, Will & Emery LLP | SARAH ELIZABETH SIMONETTI<br>Morris, Nichols, Arsht & Tunnell LLP |
| TIMOTHY M. DUNKER<br>McDermott, Will & Emery LLP | JOSHUA MACK<br>Wilson, Sonsini, Goodrich & Rosati | |
| KATHERINE PAPPAS<br>McDermott, Will & Emery LLP | MICHAEL J. FLYNN<br>Morris, Nichols, Arsht & Tunnell LLP | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | |
|---|---|
| CAFC Nos. 22-2133, -2174, United Therapeutics Corporation v. Liquidia Technologies, Inc. | PTAB No. IPR2021-00406, Liquidia Technologies, Inc. v. United Therapeutics Corporation |
| | |
| | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | |
|---|---|
| | |
| | |

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 27(d), it contains 2,710 words.

This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word for Office 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ *Jaime A. Santos*
Jaime A. Santos

# EXHIBIT 6

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

**UNITED THERAPEUTICS CORPORATION,**

*Plaintiff-Cross-Appellant,*

**v.**

**LIQUIDIA TECHNOLOGIES INC.,**

*Defendant-Appellant,*

---

On Appeal from a Judgment of the United States District Court
for the District of Delaware, No. 20-cv-755 (Andrews, J.)

---

## UTC'S OPPOSED MOTION FOR EXTENSION OF TIME

---

Plaintiff-Cross-Appellant United Therapeutics Corporation (UTC) respectfully requests a fourteen-day extension of time within which to file its principal and response brief, from November 30, 2022, to December 14, 2022. *See* Fed. Cir. R. 26(b) (permitting extension for good cause); Fed. R. Civ. P. 31(a)(2) (permitting shortened time for submitting briefs). Counsel for UTC met and conferred with counsel for Defendant-Appellant Liquidia Technologies Inc., who stated that Liquidia will oppose this motion. This is UTC's first request for an extension of time.

Good cause exists for the requested extension.  Liquidia filed its opening brief twenty-five days early without informing UTC that it would do so, which prevented UTC from planning its obligations in advance to work on the brief immediately after Liquidia filed.[1]  As a result of Liquidia's unannounced choice of a filing date, UTC's principal and response brief here is due almost the exact same day as UTC's opening brief in the companion appeals, Nos. 22-2133 and 22-2174 (which involve the same parties but wholly distinct issues), rather than UTC's two briefs being due nearly a month apart.  Moreover, appellate counsel for UTC have been heavily engaged with a number of other matters, including an oral argument before the California Court of Appeal on October 20, an oral argument before the Seventh Circuit on October 27, and an upcoming oral argument before the Massachusetts Appeals Court on November 8.

---

[1] Liquidia had previously sought an expedited briefing schedule, proposing that it file its opening brief on October 14.  This Court denied that motion on October 12, noting that Liquidia was free to self-expedite if it wished.  Liquidia did not, however, file its opening brief on October 14 as it proposed, nor did Liquidia alert counsel for UTC that it would be filing a week later.

UTC's appellate counsel are also responsible for numerous briefs that will be filed between the date on which Liquidia filed its opening brief and December 1, including a brief filed in the U.S. District Court for the Eastern District of Virginia on October 24, a summary judgment opposition filed in the U.S. District Court for the District of Massachusetts on October 27, a brief to be filed in the Eighth Circuit on November 4, a brief to be filed in the Tenth Circuit on November 4, a brief to be filed in the U.S. District Court for the Western District of Washington on November 4, a reply brief in a multi-district class action pending in the U.S. District Court for the Western District of New York due on November 8, summary judgment briefing due in the U.S. District Court for the District of Columbia on November 10, a reply brief due in this Court on November 10, a rehearing response due in this Court on November 14, a brief to be filed in the U.S. District Court for the District of Connecticut on November 14, a brief due in the U.S. Supreme Court on November 17, and an opening brief in the companion cases, Nos. 22-2133 and 22-2174, due in this Court on November 28.  Counsel also has a summary judgment brief and two *Daubert* briefs due in the U.S. District Court for the District of Massachusetts on December 1, the day after

UTC's brief is now due.  Finally, appellate counsel have meetings with the Government on October 31 and November 9 with respect to the U.S. Supreme Court's request for the views of the Solicitor General in *Teva Pharmaceuticals USA, Inc. v. GlaxoSmithKline LLC*, No. 22-37.

These commitments will make it extremely difficult to complete a principal and response brief in this post-trial appeal on the current schedule, particularly because Liquidia's opening brief raises five issues on appeal.  Moreover, UTC's brief is due less than a week after the Thanksgiving holiday, when UTC's appellate counsel will either be hosting family or traveling out-of-state.  An additional fourteen days would allow counsel to attend to these family commitments while also continuing to work on this complex appeal and cross-appeal.

Extending UTC's deadline by fourteen days need not affect the timing of oral argument or disposition of these appeals or the companion appeals, Nos. 22-2133 and 22-2174, which will be argued together.[2] Briefing in the companion appeals is set to conclude on March 14, 2023, or January 30, 2023, if Liquidia ultimately dismisses its cross-appeal

---

[2] Liquidia has indicated to UTC that it intends to dismiss its cross-appeal, No. 22-2174.  If it does so, these appeals from the district court's post-trial decision will be argued together with UTC's appeal in No. 22-2133.

from the PTAB's decision as it has suggested it plans to do. In that event, even with UTC's modest two-week extension, briefing in these appeals from the district court's decision will be complete on February 13, 2023—well before the Court issues its March oral argument calendar—after which the two sets of appeals will be set for argument.[3] And even if Liquidia chooses to self-expedite its briefing in all of these cases—and the extent to which it will do so is entirely unclear—there is no reason why granting UTC's modest two-week extension would affect the placement of any of these appeals on this Court's oral argument calendar, much less the ultimate disposition of the appeals.

Accordingly, UTC respectfully requests a fourteen-day extension of time within which to file its principal and response brief, to and including December 14, 2022.

_____

[3] In other words, Liquidia appears to have chosen to file its brief at the precise time that would have the maximum adverse impact on UTC—making UTC's brief due right after the Thanksgiving holiday weekend and almost the same day as UTC's brief in the companion appeals—with no apparent beneficial impact on the schedule for arguing and resolving these appeals.

October 31, 2022                    Respectfully submitted.

                                      /s/ *Jaime A. Santos*
                                       Jaime A. Santos
                                       GOODWIN PROCTER LLP
                                       1900 N St., N.W.
                                       Washington, D.C. 20036
                                       (202) 346-4000

                                       *Counsel for Cross-Appellant*

# CERTIFICATE OF INTEREST

Counsel for Cross-Appellant certifies the following:

1. **The full name of every party represented by me is:**

   United Therapeutics Corp.

2. **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

   None.

3. **All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:**

   BlackRock Inc. may own 10% or more of the stock of United Therapeutics Corporation.

4. **The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:**

   MORRIS, NICHOLS, ARSHT & TUNNELL LLP: Jack B. Blumenfeld; Michael J. Flynn; Sarah Elizabeth Simonetti

   MCDERMOTT, WILL & EMERY LLP: Ian B. Brooks; Timothy M. Dunker; Mandy H. Kim; Amy Mahan; Katherine Pappas; Joshua Revilla; Jiaxiao Zhang

   WILSON, SONSINI, GOODRICH & ROSATI: Joshua Mack

   GOODWIN PROCTER LLP: Joel Broussard; Harrison Gunn; Eric Levi; Huiya Wu

   BOIES SCHILLER FLEXNER LLP: Bill Ward

5.   **The title and number of any case known to me to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal are:**

Court of Appeals for the Federal Circuit: Nos. 22-2133, 22-2174:
  *United Therapeutics Corporation v. Liquidia Technologies, Inc.*

PTAB No. IPR2021-00406: *Liquidia Technologies, Inc. v. United Therapeutics Corporation.*

October 31, 2022                              */s/ Jaime A. Santos*
                                             Jaime A. Santos

8

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d) and 32(g), the undersigned hereby certifies that this motion complies with the type-volume limitation of Federal Circuit Rule 27.

1.    Exclusive of the exempted portions of the motion as provided by Fed. R. App. P. 27(d)(2) and 32(f), the motion contains 957 words.

2.    The motion has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Century Schoolbook font as provided by Fed. R. App. P. 32(a)(5)-(6).  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

October 31, 2022                    */s/ Jaime A. Santos*
                                    Jaime A. Santos

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

October 31, 2022                    /s/ *Jaime A. Santos*
                                   Jaime A. Santos

# EXHIBIT 7

STATE OF NORTH CAROLINA

DURHAM COUNTY

UNITED THERAPEUTICS
CORPORATION,

          Plaintiff,

     v.

LIQUIDIA TECHNOLOGIES, INC.
and ROBERT ROSCIGNO,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 4094

**SECOND AMENDED CASE
MANAGEMENT ORDER**

1.    **THIS MATTER** is before the Court on Plaintiff United Therapeutics Corporation's ("UTC") Second Motion to Amend Case Management Order (the "Motion"), (ECF No. 99).  The Court heard argument on the Motion at a hearing held on 20 June 2023 during which counsel for all parties were present and participated.

2.    After consideration of the parties' positions, for good cause shown and in the exercise of its discretion, the Court hereby **GRANTS** the Motion and amends the Case Management Order ("CMO"), (ECF Nos. 44, 72), as follows:

    a.  The deadline for completing fact discovery shall be 6 October 2023 and the deadline for completing expert witness discovery shall be 26 January 2024.

    b.  The party bearing the burden of proof on an issue shall serve its report(s) by 17 November 2023, and the party not bearing the burden of proof on an issue shall serve its report(s) by 29 December 2023.

    c.   The deadline to file post-discovery motions shall be 29 February 2024.

3.    Except as specified herein, the CMO entered on 21 July 2022, as amended on 16 February 2023, (ECF Nos. 44, 72), remains in effect.

4.    The parties are expected to comply with Business Court Rule 10.9's directive to engage in a thorough, good faith attempt to resolve or narrow any discovery dispute, and they are directed to complete any such attempt within thirty (30) days of service of the discovery request at issue. Should attempts at resolution prove unsuccessful, the parties are directed to bring the issue to the Court's attention promptly and to include in their submissions their respective positions regarding whether they believe a Rule 10.9 conference would be beneficial or whether they wish to proceed directly to motion practice.

    IT IS SO ORDERED, this the 20th day of June, 2023.

                             /s/ Julianna Theall Earp

                             Julianna Theall Earp
                             Special Superior Court Judge
                              for Complex Business Cases