**No. 2023-1805**

# United States Court of Appeals for the Federal Circuit

———————————————

UNITED THERAPEUTICS CORPORATION,

*Appellant,*

– v. –

LIQUIDIA TECHNOLOGIES, INC.,

*Appellee.*

———————————————

APPEAL FROM THE PATENT TRIAL & APPEAL BOARD
IPR2021-00406

———————————————

**REPLY BRIEF OF APPELLANT
UNITED THERAPEUTICS CORPORATION**

———————————————

**UNITED THERAPEUTICS CORPORATION**
Shaun R. Snader
1735 Connecticut Ave., NW
2nd Floor, Washington, DC 20009
Tel: +1 202 304 1701
ssnader@unither.com

**GOODWIN PROCTER LLP**
William Jackson
1900 N St., NW
Washington, DC 20036
Tel: +1 202 346 4216
wjackson@goodwinlaw.com

**MCDERMOTT WILL & EMERY LLP**
Douglas H. Carsten
Arthur P. Dykhuis
18565 Jamboree Road, Suite 250
Irvine, CA 92612-2565
Tel: +1 949 851 0633
dcarsten@mwe.com
adykhuis@mwe.com

Adam W. Burrowbridge
500 North Capitol Street, NW
Washington, DC 20001-1531
Tel:  +1 202 756 8797
aburrowbridge@mwe.com

*Counsel for Appellant United Therapeutics Corporation*

**CORRECTED – November 2, 2023**

# CERTIFICATE OF INTEREST

Counsel for Appellant certifies the following:

**1.    The full name of every party represented by me is:**

United Therapeutics Corporation.

**2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

None.

**3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:**

BlackRock Inc., collectively through different BlackRock entities, may own 10% or more of its stock.

**4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:**

Foley & Lardner: Stephen B. Maebius, Michael Houston, George Quillin, Jason N. Mock; McDermott Will & Emery: Judy Mohr, Ph.D., April E. Weisbruch, Mandy Kim

**5.    The title and number of any case known to me to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal are:**

*United Therapeutics Corporation v. Liquidia Technologies, Inc.*, Nos. 2022-2217, 2023-1021 (Fed. Cir.); originating from *United Therapeutics Corporation v. Liquidia Technologies, Inc.*, 1-20-cv-755 (D. Del.)

**6.    Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):**

None.

Dated: November 2, 2023          */s/ Douglas H. Carsten*
                                 Douglas H. Carsten

# TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

ARGUMENT ....................................................................... 4

    I.   The Board erred in determining that JAHA and JESC are prior art. ................................................................... 4

        A.   The Board erred by relying on a public accessibility theory not raised in Liquidia's Petition. ............................. 4

        B.   The Board's determination that JAHA and JESC were "distributed" in not-in-evidence "abstract books" is also not supported by substantial evidence. ............................. 12

    II.  The Board's claim 1 obviousness decision is flawed. ............... 17

        A.   The Board's decision rests on impermissible hindsight and is unsupported by substantial evidence. ..................... 17

        B.   Liquidia—like the Board—overlooks UTC's evidence of unexpected results. ........................................................... 24

   III.  The Board's dry powder dependent claim obviousness decision is legally flawed and unsupported by substantial evidence. ................................................................................ 27

        A.   UTC contested the non-obviousness of the dependent dry powder claims. ........................................................... 27

        B.   The Board legally erred and Liquidia's response confirms it. ......................................................................... 30

        C.   The Board's dry powder reasonable expectation of success decision is unsupported by substantial evidence. ..................................................................................... 35

CONCLUSION ................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alacritech, Inc. v. Intel Corp.*,
    966 F.3d 1367 (Fed. Cir. 2020) ......................................................... 13

*Belden Inc. v. Berk-Tek LLC*,
    805 F.3d 1064 (Fed. Cir. 2015) ........................................................ 10

*Burlington Truck Lines, Inc. v. U.S.*,
    371 U.S. 156 (1962) ............................................................................ 8

*Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*,
    966 F.3d 1316 (Fed. Cir. 2020) ......................................................... 29

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966) ............................................................................... 33

*Hamamatsu Photonics K.K. v. Semicaps Pte Ltd.*,
    IPR2017-02110 (PTAB Mar. 18, 2019) ........................................ 12, 16

*Hollmer v. Harari*,
    681 F.3d 1351 (Fed. Cir. 2012) ......................................................... 28

*Hulu LLC v. Sound View Innovations, LLC*,
    IPR2018-01039, 2019 WL 7000067 (PTAB Dec. 20, 2019) ........... 9, 11

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017) ......................................................... 15

*Interconnect Planning Corp. v. Feil*,
    774 F.2d 1132 (Fed. Cir. 1985) ......................................................... 32

*Leeds & Catlin Co. v. Victor Talking Mach. Co.*,
    213 U.S. 301 (1909) ........................................................................... 32

*Medtronic, Inc. v. Barry*,
    891 F.3d 1368 (Fed. Cir. 2018) ......................................................... 16

*Nobel Biocare Services AG v. Instradent USA, Inc.*,
   903 F.3d 1365 (Fed. Cir. 2018) ................................................... 15, 16

*In re NuVasive, Inc.*,
   841 F.3d 966 (Fed. Cir. 2016) ......................................................... 12

*OSI Pharms., LLC v. Apotex Inc.*,
   939 F.3d 1375 (Fed. Cir. 2019) ....................................................... 15

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
   929 F.3d 1363 (Fed. Cir. 2019) ......................................................... 7

*In re Sang Su Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) ......................................................... 8

*Telefonaktiebolaget LM Ericsson v. TCL Corp.*,
   941 F.3d 1341 (Fed. Cir. 2019) ....................................................... 10

*TQ Delta LLC v. CISCO Systems, Inc.*,
   942 F.3d 1352 (Fed. Cir. 2019) ................................................ *passim*

## Statutes

35 U.S.C. § 112 ...................................................................................... 32

35 U.S.C. § 312(a)(3) ............................................................................... 4

## Other Authorities

37 C.F.R. § 42.6(a)(3) ............................................................................... 5

# GLOSSARY

'212 Patent................. U.S. Patent No. 6,521,212 (Appx1207-1233)

'793 Patent................. U.S. Patent No. 10,716,793 (Appx1001-Appx1025)

BB ............................. UTC's Opening Blue Brief

Board ........................ Patent Trial and Appeal Board

DPI............................ Dry powder inhaler

JAHA ........................ IPR Exhibit 1008: Excerpted pages from
                          Circulation: Journal of the American Heart
                          Association (Appx1241-Appx1243)

JESC ......................... IPR Exhibit 1007: Excerpted pages from
                          European Heart Journal: Journal of the
                          European Society of Cardiology (Appx1234-
                          Appx1240)

Liquidia..................... Appellee Liquidia Technologies, Inc.

POR........................... Patent Owner Response

RB ............................. Liquidia's Response Red Brief

UTC........................... Appellant United Therapeutics Corporation

**INTRODUCTION**

The Board's analyses of public accessibility, solution dosing/delivery, and dry powder administration are legally flawed and factually unsupported. Liquidia defends the Board's analyses by habitually citing evidence that the Board did not credit or explicitly rejected. Liquidia's obfuscation only underscores the point: the Board's decision cannot stand.

First, the Board erred in determining that the JAHA and JESC journal supplements are prior art. JAHA and JESC have been moving targets from the beginning: Liquidia argued in its Petition that these references were publicly accessible via *publication* in journal supplements. Based on flaws in this argument, the Board instead adopted a "research aids" theory of public accessibility. But in response to the Precedential Opinion Panel decision, the Board admitted error and pivoted to a new theory: that never-seen, not-in-evidence "abstract books" were *distributed* at conferences. That is the Board's ultimate rationale and what Liquidia must defend. But this rationale is unmoored to the Petition and unsupported by substantial evidence.

1

Liquidia now argues that the abstracts were "presented at conferences." But the Board relied on a *distribution* theory, not a *presentation* theory. Liquidia also obscures the distinction between publication in the JAHA and JESC journal supplements (on which Liquidia staked its Petition) and the supposed "abstract books" the Board relied on. Even if the Board were permitted to stray from the Petition to adopt new theories, speculation about what "would have" typically occurred at conferences—that no declarant attended, relating to abstract books that nobody has ever seen—is not substantial evidence. The Board's choice of language, stating that the hypothetical abstract books "*would have* been provided to attendees," underscores the speculation underpinning the Board's decision.

Second, hindsight infected the Board's analysis of whether JESC teaches the claimed delivered dose. Everyone agrees that JESC does not expressly disclose any delivered dose. To fill that gap, the Board relied on generic and conclusory assertions relating to starting "fill volumes" and midpoint "nebulized" volumes—not final "delivered" doses. To defend the Board, Liquidia attempts to redefine "nebulize" to mean "delivery." RB18. But nebulized and delivered volumes are different,

and nothing Liquidia argues addresses the Board's failure to rely on evidence explaining how one can be converted to the other.

Moreover, neither the Board nor Liquidia addressed UTC's arguments of unexpected results relating to JESC and JAHA. At a minimum, this mandates a remand for the Board to address the evidence of unexpected results in the first instance.

Finally, the Board erred in finding the dependent dry powder claims obvious by failing to analyze the dependent claims as separate inventions, including all their referenced limitations, and by failing to examine the entire record. Indeed, the Board completely sidestepped Dr. Gonda's testimony concerning technical facts that contradict its decision. Liquidia cries waiver, but that accusation ignores UTC's dry powder argument and extensive supporting evidence.

Because the Board's reasoning is legally flawed and unsupported by substantial evidence, it must be reversed.

# ARGUMENT

## I. The Board erred in determining that JAHA and JESC are prior art.

### A. The Board erred by relying on a public accessibility theory not raised in Liquidia's Petition.

The Board determined that the JESC and JAHA journal supplements were publicly accessible not because a POSA could access those documents before the critical date, but because different "abstract books" were "distributed" at conferences. But Liquidia's Petition never raised this theory. Liquidia tries to circumvent this fundamental problem, but attorney argument cannot change the facts.

1. The statute cabins Liquidia: the scope of IPRs is limited to challenges that are "identifie[d], in writing and with particularity" in the petition. 35 U.S.C. § 312(a)(3). Thus, Liquidia tries to equate the "distribution" of "abstract books" with the argument made in its Petition—public accessibility by publication of journal supplements. But these theories are distinct and implicate different facts. The Board's

4

decision did not rely on Liquidia's journal publication argument or even presentation of the abstracts at conferences.[1]

Liquidia elides these disparate prior art theories by arguing that the Board "found" "[i]n its FWD" that JESC and JAHA were § 102(b) prior art because they were "presented" at conferences (RB12) and further "found" that this supposed "argument was made in Liquidia's Petition." RB35.    Not so.    The Petition makes a different argument: that JAHA/JESC were publicly available because they were "published" in journal supplements.  Although the Petition stated in passing that JESC was "presented" at a conference, Liquidia offered none of the facts that this Court reviews to determine public accessibility by presentation. BB34.[2]    And Liquidia's Petition made *no* reference to JAHA being

---

[1] Liquidia now argues that "oral presentation" is "an issue not presented here" (RB36), further obscuring what the Petition's "presented" meant or how it could preserve a distinct theory of document "distribution" with sufficient particularity.  BB30, 34.

[2] Liquidia argues that its JAHA presentation theory is not "new" (RB11), but most of the supporting citations are not to the Petition. RB11; 37 C.F.R. § 42.6(a)(3) ("[a]rguments must not be incorporated").  The only citation to the Petition, Appx0135, states only that JAHA was "published."

5

"presented" or "distributed" at the American Heart Association's 2004 Scientific Sessions Conference. *Id.*

Moreover, even if the Petition had raised a presentation argument, the Board did not rely on it. The FWD contains no findings, analysis, or conclusions relating to JESC/JAHA being "presented" at conferences. Liquidia repeatedly cites Appx0009-Appx0010, but those two pages just recite the parties' competing arguments. The Board relied on only the "research aid" theory that it later rejected as flawed following the POP decision. Appx0011-Appx0012.

Liquidia itself has acknowledged that distribution and presentation are not the same. Before the Board, Liquidia correctly conceded that a theory of whether a reference was "publicly presented" is "*independent of whether that presentation was further distributed.*" Appx0470 (emphasis added) (collecting cases). That is a damning admission. Even now, Liquidia does not argue that it raised this totally new distribution-by-abstract-book theory in its Petition. RB29 (arguing that the Petition established only that "abstracts were printed in journals and presented at conferences").

Liquidia argues that *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1370 (Fed. Cir. 2019) is inapposite because Samsung never argued that the reference was "presented or disseminated" at the meetings. RB36. Liquidia misses the point. Samsung argued that a reference was publicly accessible because it was discussed at meetings, uploaded to websites, and emailed to a listserv. *Samsung*, 929 F.3d at 1369-70. The Court held that Samsung waived its argument that discussion at meetings created public accessibility because the argument was not timely raised. *Id.* at 1370. The point is that the Court recognized that Samsung's different theories of public accessibility are distinct. As Liquidia acknowledged, presentation and distribution are "independent" theories, and the Petition's use of the single word "presented" for *JESC* does not preserve a theory of "distribution" for either JESC or JAHA. Thus, like Samsung, Liquidia has forfeited this argument.

2. Liquidia also tries to circumvent the Board's error by conflating the references it relied on in its Petition (journal supplements) with the references the Board found publicly accessible (abstract books). The two are meaningfully different as evinced by the Board pivoting from the journal supplements to the abstract books in response to the POP

7

decision. Liquidia's response brief defines "JAHA" and "JESC" as the supplemental journals of record: "**J**ournal of the **A**merican **H**eart **A**ssociation" and "**J**ournal of the **E**uropean **S**ociety of **C**ardiology," RB(viii) (TOA), which is consistent with the exhibits that Liquidia submitted as evidence below—scanned copies of journal supplements. Journal supplements and abstract books are different. RB27 (acknowledging the asserted "journals" separately from the "abstract books"). This distinction is important: the Board never saw or analyzed the contents of the hypothetical, not-in-evidence "abstract books."

For this reason, much of the discussion in Liquidia's response brief is a red herring. Liquidia argues at length about "date-stamped copies of the journals," "publication by an established publisher," "research aids," and that the journals were sufficiently "indexed and searchable." RB32-33. But the Board relied exclusively on the abstract books supposedly distributed at conferences and expressly rejected other arguments, such as the "research aids." Liquidia cannot substitute a new rationale for the Board's. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002) ("review of an administrative decision must be made on the grounds relied on by the agency") (quoting *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156,

168 (1962)) (declining to consider alternative grounds). This Court's precedent is clear: under the APA, "[o]ur review of a patentability determination is confined to the grounds upon which the Board actually relied." *TQ Delta LLC v. CISCO Systems, Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) (quotations omitted).

3. Liquidia attempts to recast its distribution theory as a dispute about reply "evidence," but its best case squarely supports UTC. Liquidia relies on *Hulu LLC v. Sound View Innovations, LLC*, No. IPR2018-01039, 2019 WL 7000067, at *6 (PTAB Dec. 20, 2019) (Precedential Opinion Panel) for the proposition that a petitioner may submit reply evidence in response to a patent owner's prior art challenge. However, new evidence can be submitted only if it "does not constitute 'changing theories after filing the petition.'" Appx0010 (quoting *Hulu LLC*, 2019 WL 7000067, at *6).

Here, the Board determined only that "[t]he argument that Voswinckel JESC was publicly presented is not a change in theory from the Petition, *because* Petitioner presented this argument in the Petition." Appx0010 (citing Appx0133) (emphasis added). Notably, the Board made no similar finding for JAHA—nor could it—because, again, the Petition

9

never argued that JAHA was publicly "presented," much less "distributed" via "abstract books." For JAHA the Petition was silent on any public accessibility theory other than having been "published in the Journal of the American Heart Association on October 26, 2004." Appx0135. On this point, there can be no doubt. The Board explicitly determined that the only "argument[] made by Petitioner" concerning JAHA that was "not untimely" was "(3) that Voswinckel JAHA was referenced in a publicly accessible document," *not* that it was (1) "presented publicly" like JESC. Appx0010.[3] The Board conclusively recognized that any other public accessibility theory for JAHA was "untimely."[4] Liquidia's broad assertion that the FWD "found" that there "was not a change in theory" is flatly wrong. RB33.

---

[3] Liquidia never offered any evidence of conference *presentation* for either JAHA or JESC. Liquidia argues that the Board found "specific evidence" that JESC and JAHA were "publicly presented." RB41. Liquidia is wrong. The Board concluded only that "both references were distributed." Appx0061.

[4] Liquidia's reliance on *Telefonaktiebolaget* and *Belden* is misplaced. RB34. Neither case permits completely changing theories after filing a petition.

For these same reasons, Liquidia's complaint that UTC does not cite any case where "a petitioner is precluded from subsequently presenting additional evidence in support of a public accessibility argument first raised in the petition" (RB35) is a red herring. UTC does not take issue with reply evidence submitted to support a theory "first raised in the petition." The issue is reliance on a theory that Liquidia *never* raised in its Petition. BB30-36. The law is clear:

> The opportunity to submit additional evidence does not allow a petitioner to completely reopen the record, by, for example, changing theories after filing a petition. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369-70 (Fed. Cir. 2016) (affirming Board discretion to deny entry of petitioner's reply brief that contained an improper new unpatentability theory and evidence, citing, among other things, § 312(a)(3)); *see also* CTPG at 74 ("'Respond,' in the context of 37 C.F.R. § 42.23(b), does not mean proceed in a new direction with a new approach as compared to the positions taken in a prior filing.").

*Hulu LLC*, 2019 WL 7000067, at \*6. Because Liquidia never raised a distribution-by-abstract-book theory of public accessibility in the Petition, the Board was foreclosed from that "new approach." *Id.*; BB30-36. The Board's decisions should be reversed.

At minimum, the Board erred by determining that JAHA and JESC were § 102(b) prior art based on evidence first advanced in Liquidia's reply without affording UTC an opportunity to submit contrary evidence. UTC moved to submit evidence that would rebut this new argument, but UTC's motion was denied.    BB25-26, 36-37.    This APA violation mandates, at least, a remand.  *See In re NuVasive, Inc.*, 841 F.3d 966, 970 (Fed. Cir. 2016).

### B.    The Board's determination that JAHA and JESC were "distributed" in not-in-evidence "abstract books" is also not supported by substantial evidence.

The Board's decision is unprecedented: never before has the Board or this Court determined that an asserted reference was publicly available based (1) on a different document never seen and not-in-evidence, and (2) without any evidence from a declarant, or otherwise, establishing that the exact same information relied on to invalidate a patent was actually publicly disclosed.  *See, e.g., Hamamatsu Photonics K.K. v. Semicaps Pte Ltd.*, IPR2017-02110 (PTAB Mar. 18, 2019) (denying on all grounds where Petitioner did not produce "the exact reference" or prove the "article before us and asserted in Petitioner's grounds was the same article allegedly distributed at the conference").  Similarly, here,

there is no evidence that the "abstract books" relied on by the Board are the "exact" same as the JESC and JAHA references cited in the Petition.

Rather than point to such evidence, Liquidia asserts that other evidence *not relied on by the Board* amounts to substantial evidence. Liquidia's attempt to change tack is futile. *See Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1372–73 (Fed. Cir. 2020) ("Insistence that the substantial evidence standard requires us to affirm so long as there is evidentiary support in the record, even if the support was not specifically cited by the Board is a fundamentally incorrect statement of the law.") (cleaned up).  For example, Liquidia cites "2004 date-stamped journals from reputable libraries."  RB38.  But the Board correctly rejected that theory of public accessibility.  Appx0011-Appx0012 (relying instead on "research aids" to establish public accessibility).  Liquidia presented nearly 100 pages of argument and expert opinions regarding the alleged indexing of JAHA/JESC but could not establish how the hard-to-find-to-this-day journal supplements could have been accessed by a POSA prior to the '793 patent's critical date.

Liquidia argues that UTC "ignores the numerous other sources of evidence cited by the Board" (RB38), but that evidence is not probative of

abstract book existence and distribution.   For example, the rejected theory that JESC and JAHA were "published" in journal supplements says nothing about whether different documents, *i.e.* abstract books, were actually distributed and what they disclosed.   Liquidia argues that the journals establish that JESC and JAHA were "presented" on "Sunday 29 August 2004" and "November 10, 2004."[5]   This attempt to shoehorn the Board's distribution finding into a presentation theory is unavailing.   The Board made no findings concerning whether the abstracts were "presented."   RB39.   Liquidia further points to the size and nature of the conference sessions, the types of attendees and expectations of confidentiality, but none of this speaks to the Board's error: relying on

---

[5] Liquidia argues that the October 2004 date on the JAHA journal supplement "is consistent" with the later date, November 2004, of the AHA conference.   RB42.   Liquidia is wrong.   The Board did *not* find that JAHA was distributed "prior to the conference."   *Id.*   Rather, the Board decided "the abstract book" would have been provided to attendees "*at* Scientific Sessions 2004."   *Compare* Appx0061 (finding "JAHA was a printed publication *as of the date of the conference*") *with* Appx0059 (finding JESC "distributed . . . *before or at the time of* the ESC Congress 2004") (emphases added).   The discrepancy between the Petition's date of public accessibility (October) and the date relied on by the Board (November) further evinces the novelty of the Board's rationale.

speculation to presume that physical "abstract books"—matching JESC and JAHA in substance—were "distributed" to conference attendees.

Notably, Liquidia's library sciences expert did not identify any evidence of "abstract books" having been distributed at the conferences. To the extent that the "abstract books" exist—and there is no non-speculative evidence that they do—they have never been seen by any witness in this proceeding and their contents have not been corroborated. Liquidia says that JESC was "excerpted" from the hypothetical "abstract book" (RB 14), but no witness made this blind leap on which the Board's decision relies. Appx0059, Appx0061. The Board relies on only *speculation* from two individuals that have no actual knowledge concerning what they believe "would have" occurred.[6]

It is not "hyperbole" to ring the alarm. RB41. The Board relied on *Nobel Biocare* for the proposition that "distribution" at a conference may constitute sufficient dissemination to show public accessibility.

---

[6] Liquidia apparently disagrees that "[i]t is well established that speculation does not constitute 'substantial evidence.'" RB38 n.6. This black letter law is beyond dispute. *See, e.g., OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("'Mere speculation' is not substantial evidence.") (quoting *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017)).

Appx0057.  But in *Nobel*, "the actual copy of the ABT Catalog" "obtained" at the conference was in evidence (Appx7972-Appx8034), corroborated by "specific details" of receipt, and the catalog had "identical pages" to those asserted as prior art.  Appx7914-Appx7971.  *Nobel Biocare Services AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1376-1378 (Fed. Cir. 2018). Similarly, the Board relied on *Medtronic* where the actual copy of the "Video and Slides" at-issue were in evidence (Appx7881-Appx7913), and the only question was "whether such materials were sufficiently disseminated at the time of their distribution at the conferences." *Medtronic, Inc. v. Barry*, 891 F.3d 1368, 1381 (Fed. Cir. 2018). Accordingly, courts assess "the facts and circumstances surrounding the reference's disclosure" to determine whether that *undisputed disclosure* is legally sufficient to render the reference publicly accessible.  *Id.* at 1380.

Here, the parties dispute whether the "abstract books" actually exist and what they would disclose if they did exist.  Absent that proof, sufficiency of public accessibility cannot be assessed.  *See Hamamatsu Photonics*, IPR2017-02110 (PTAB Mar. 18, 2019) ("[w]ithout adequate proof from Petitioner that the . . . version relied on in the grounds was in

existence as of the critical date, we do not reach the issue as to whether such a document was sufficiently accessible under § 102(b).").  Otherwise, this Court's fact-bound precedent devolves into an unprecedented and legally erroneous presumption of "public accessibility" for scientific conferences.

## II.    The Board's claim 1 obviousness decision is flawed.

### A.    The Board's decision rests on impermissible hindsight and is unsupported by substantial evidence.

What matters under the claims is the dose *delivered* to the patient. The Board erroneously decided that the alleged prior art disclosed a delivered dose of 15-90 µg of treprostinil based on an assumption: a POSA would assume that "at least one milliliter" of solution was delivered in JESC.  Appx0016-Appx0017.  No substantial evidence supports this conclusion.  The Board simply followed the lead of Liquidia and its experts in adopting a volume of solution that made for convenient math and arrived at doses within the claimed range—archetype hindsight.

In practice, nebulizers are loaded with some amount of drug solution (fill volume), some portion of this fill volume is nebulized (nebulized volume), and some portion of the nebulized volume is delivered to the patient (delivered volume).  JESC does not disclose its

fill volume, much less its nebulized volume, and even if it did, that still does not inform a POSA of the dose delivered. The Board did not rely on any evidence concerning how a POSA would convert fill volumes or nebulized volumes to the quantity of API delivered, as the API, formulation, patient, method of use, and specific device all affect drug delivery. Appx5188 (114:22-115:5); Appx4827-Appx4831, ¶55-56. Liquidia's three bullets of alleged testimonial support (RB43) underscore the flaws in the Board's decision. Each relates to a different class of evidence—fill/prescribed volume or nebulized volume—not *delivered* treprostinil, as the claims require.

**First bullet, Dr. Gonda's testimony:** Liquidia raises the Board's citation (Appx0015) to Dr. Gonda, Liquidia's "formulation" expert, stating that "'in May 2006 . . . nebulizers conventionally deliver[ed] between 1 and 5 mL' of solution." RB43 (citing Appx1166, ¶56). But the Board did not rely on Dr. Gonda at all. *See* Appx0016-Appx0017. Nor should it have, as unsupported conclusory expert testimony is entitled to no weight, and paragraph 56 relates *only* to "fill volumes" not "delivered" treprostinil—a point admitted below and uncontested on appeal. *See* Appx0478; BB45. Elsewhere Liquidia erroneously argues that Dr. Gonda

18

"refers to *nebulized* volume"—which is "the same language the Board cited" (RB45-46), but the Board relied on Dr. Hill for a "nebulize[d]" volume (Appx0017 (citing Appx1054 ¶65)), not Dr. Gonda (who describes fill volumes only, Appx5198-Appx5199), and neither is a "delivered" dose as the claims require.

**Second bullet, Dr. Hill's testimony:** Liquidia's attempt to *redefine* "nebulize (i.e., aerosolize liquid)" (RB17) to "'nebulize' (*i.e. deliver*)" (RB18) (emphasis altered) is plainly incorrect. This wordplay underscores the lack of evidence for what matters—delivered dose. Treating "nebulize" as synonymous with "deliver" is also contradicted by Dr. Hill's opinion that a POSA would have understood that "'nebulizers . . . nebulize (i.e., *aerosolize liquid*)." RB43 (citing Appx1054, ¶65). The amount of "aerosolize[d] liquid" is not the same as the amount "actual[ly] delivered." *See* Appx0014-Appx0015 (recognizing that the claim requires the dose delivered); Appx4830-Appx4832.

These technical facts are not disputed: first, a "fill volume" of solution is loaded into the nebulizer[7]; second, only *some* of the fill volume

---

[7] *See* Appx4767; Appx4817-Appx4818; Appx5362 ("*Fill volume*: the volume of drug solution initially put into the nebuliser chamber").

is actually "nebulized" (*i.e.*, aerosolized) leaving "dead volume" in the nebulizer[8]; finally, only *some* of the aerosol is actually "delivered" to the patient due to well-known, nebulizer-specific, inefficiencies[9]. UTC does not attempt to "discredit" Dr. Hill. RB45. UTC simply takes him at his word: Dr. Hill *explicitly* testified about the amount of liquid "aerosolize[d]," *not* delivered. Appx1054.

Neither the Board's reasoning nor the evidence it cites provides a discernable rationale for how "to the extent that something less than the entire fill volume was delivered to the patient . . . the *actual delivered* solution volume [was] at least one milliliter." Appx0016-Appx0017 (emphasis added). In the place of "delivery" evidence, the Board only relies on conclusory say-so concerning distinct "fill" and "nebulized" volumes. Dr. Hill's testimony does not help.

---

[8] *See* Appx4767; Appx5028-Appx5029 (144:21-145:5); Appx4761-Appx4762; Appx5033 (149:8-12).

[9] *See* Appx4818, ¶40; Appx5188-Appx5189 (114:23-115:5); Appx2403 ("like all other nebulized treatments, the amount delivered to the lungs will depend on patient factors"); Appx4826, ¶52 (citing Appx5159 (85:9-14); Appx7363-Appx7364).

Dr. Hill explicitly "assumes" that "at least 1 mL" of liquid would be aerosolized and then "*[a]ssum[es]* at least 1 mL of volume for delivery." Appx1054, ¶65 (emphasis added). Thus, Dr. Hill assumes that the entire fill volume is delivered to the patient—100% efficiency with no loss. Dr. Hill's assumption is based on Dr. Gonda's "fill volumes" assumption—that "at least 1 mL" would be filled. Dr. Hill relied on Dr. Gonda's opinion without reviewing the basis of that opinion. Appx5027 (143:2-7); Appx5017 (133:6-22). Uninformed expert testimony—assumption piggybacked on assumption—is not substantial evidence.

Liquidia's allegation that UTC "misrepresents" Dr. Hill's testimony for not acknowledging his "own practice" is false and not well taken. RB46; *see* BB48 (addressing Dr Hill's "own practice"). First, Dr. Hill only cites Dr. Gonda's unsupported declaration for the proposition that "nebulizers at the time were known to nebulize (i.e., aerosolize liquid) at least [1 mL] volume." Appx1054, ¶65. Dr. Hill cited his "own practice" for a different point, *i.e.*, "prescribed volumes." But the prescribed volume is simply the fill volume (mL), not the amount of API (μg) actually

21

"delivered."[10]   The Board correctly did not rely on Dr. Hill's "own experience," which is irrelevant to the delivered dose.

Liquidia argues—without citation—that Dr. Hill offered evidence "of nebulizer *delivered* volumes prescribed to patients in practice." RB46 (emphasis added).  Liquidia has no citation because Dr. Hill offered no such opinion.  Dr. Hill is a physician, not a technical expert on nebulizer inefficiencies that dictate actual delivery, which is why he "assum[ed]" the volume delivered rather than opining on it.  *See* Appx1054 (citing personal knowledge relating to "prescribed" volumes only and relying on Dr. Gonda for the amount "nebulizers at the time were known to nebulize (i.e., aerosolize liquid)").  Liquidia's bootstrapping of paragraph 66 to its second bullet (RB43) is also misplaced.  The Board did not acknowledge paragraph 66, and it says nothing about how a POSA would understand the amount of treprostinil "delivered" in JESC.

Finally, Dr. Hill's uncredited and conclusory testimony that "I prescribed volumes of a [sic] least 1mL for inhalation therapy using

---

[10]  *See, e.g.*, Appx1166 n.4 (consistently describing "Dosage and Administration" mL fill volumes); BB44-45; Appx3925; Appx5190 (116:4-19); Appx1784; Appx2403; Appx2231-Appx2232.

nebulizers," lacks any nexus to the claimed drug substance (treprostinil), dosing (15-90 μg), inhalation time (1-3 breaths), or even relevant time (2006). Appx1054; Appx4779-Apx4780; *see also* Appx5188-Appx5189 (114:23-115:5). Liquidia's claim (RB46) that there is no "legal or factual requirement" for Dr. Hill to have done so is plainly wrong. *See TQ Delta,* 942 F.3d at 1358 ("Conclusory expert testimony does not qualify as substantial evidence."). Liquidia's cases (RB46-47) concerning "[e]xpert experience" being "frequently credited" are inapt but also irrelevant because the Board did not credit Dr. Hill's flawed "own experience" testimony.

**Third bullet, Dr. Waxman's testimony:** Liquidia cites to UTC's expert Dr. Waxman's deposition testimony, again conflating "fill volumes" or "prescribed volumes" with the amount of treprostinil "delivered."

Dr. Waxman never testified that "a physician would have *no* expectation of the amount of drug delivered to his patient." RB47. Instead, Dr. Waxman, testified that despite his "20 years of practice" (*id.*), he would not know how much treprostinil was delivered "because some of it adheres to the vehicle" and "you see that mist coming out when

they breath out so you really don't know." Appx3186 (154:2-17). Neither the Board nor Liquidia's experts accounted for these real-world technical delivery complexities. Liquidia's argument that "[t]he Board specifically addressed UTC's concerns by citing consistent expert [physician] testimony that neither had ever delivered less than 1mL to a patient" (*id.*) is unfounded and depends on attorney wordplay that conflates physician fill/prescribed volumes with delivered doses. As Dr. Waxman explained in his unrebutted testimony, they are not the same. Appx3186; *see also* Appx5190 (116:4-19); Appx4818.

At bottom, the Board rejected the majority of Liquidia's evidence. The evidence that the Board relied on relates only to two sentences concerning fill volumes (Gonda), volumes of nebulized/aerosolized liquid (Hill), and physician prescribed volumes (Hill/Waxman); not the amount of treprostinil "delivered" to a patient as required by the claims. Because the Board's decision is not supported by substantial evidence, the Court should reverse.

### B.    Liquidia—like the Board—overlooks UTC's evidence of unexpected results.

Liquidia defends the Board's opinion by arguing that UTC only presented "unexpected results" compared to "iloprost" and waived any

argument comparing to the closest alleged prior art: JESC and JAHA (which involve treprostinil). Both arguments fail for the same reason—UTC plainly argued unexpected results relative to inhaled treprostinil.

The Patent Owner Response dedicated an entire section to "Unexpected Results" and specifically argued that "high doses *of treprostinil* were known in the art to produce dose-limiting side effects. As a result, a POSA would not have expected [high] dosage ranges delivered in just a few breaths to be well tolerated." Appx0416 (citing Appx5244, Appx5246-Appx5248) (emphasis added); *see also* Appx0367 (noting "the surprising result" that "the time of inhalation could be reduced" to "single-breath" administration even though JESC showed increased side effects at higher concentrations); Appx0381-Appx0382 (arguing that "JESC teaches away from titrating up to higher drug concentrations over an even shorter time interval" because "[a]t higher doses, local and systemic side effects may occur").

UTC also cited Dr. Seeger's declaration where he stated that the unexpected results presented in the '793 patent's specification were "not reported in either [JESC or JAHA] (Exs. 1007 and 1008)," explaining that the unexpected slower time to reach "peak plasma concentration" made

it possible "to avoid major systemic side effects even when high total inhalation doses are used." Appx3983.

Liquidia argued in its Reply that the closest treprostinil prior art "discloses either no side effects, mild and transient side effects, or that the drug was 'safe, and well tolerated' in the claimed dose range." Appx0492. In direct response, UTC's Sur-Reply reiterated that "secondary considerations rebut Petitioner's grounds" and that "[e]ven if EX1007-EX1008 [*i.e.*, JESC and JAHA] were prior art, the ability to administer treprostinil at high doses in only 1-3 breaths and with fewer side effects was unexpected." Appx0584-Appx0585 (citing Appx4796 (citing Appx5244-Appx5247)).

To support its narrative that UTC's *only* "evidence compares treprostinil to iloprost", Liquidia dedicates an entire page to quotes that aggressively exclude UTC's JESC- and JAHA-related evidence. RB49. For example, in addition to the evidence above, Liquidia cites Dr. Waxman's declaration (*id.* citing Appx4795-Appx4796) but omits his testimony that it was a "surprising discovery that therapeutically effective, high doses of treprostinil could be delivered to a patient in a shorter period of time with fewer side effects," given that "higher doses

in *Voswinckel JESC* were also found to include more side effects than the 16 microgram/mL dose." Appx4795, ¶101-102 (emphasis added); *see also* Appx4797 (citing Appx5244, Appx5246-Appx5248) (inventor declaration stating that "it was unexpected that going to an even shorter interval than 1 minute to the claimed '1 to 3 breaths' would lead to better results").

The Board's failure to consider UTC's unexpected results arguments mandates a remand, so the Board can consider UTC's evidence of non-obviousness in the first instance.

### III. The Board's dry powder dependent claim obviousness decision is legally flawed and unsupported by substantial evidence.

#### A. UTC contested the non-obviousness of the dependent dry powder claims.

Despite UTC having specifically challenged the expectation of success in achieving the inventions of dependent dry powder claims 4, 6, and 7, Liquidia cries "waiver." RB51-52. Liquidia is wrong.

UTC offered several pages of arguments specific to the dry powder claims in the POR: a POSA would not find the dependent dry powder claims obvious because "the level of unpredictability in the art was high," "a POSA would be unable to formulate a treprostinil powder suitable for

administration via a dry powder inhaler for PH patients without excessive experimentation," "treprostinil would be more challenging tha[n] other drugs used with DPIs," and "powders present unique challenges." Appx0399-Appx0401. UTC made clear that for the dependent dry powder claims there is "absolutely nothing" in the '212 patent, JAHA, and JESC "suggesting or directing the person of skill in the art that they would be able to succeed." Appx0814. The Board found no waiver. In fact, the Board spent several pages analyzing UTC's reasonable expectation of success arguments. *See Hollmer v. Harari*, 681 F.3d 1351, 1356 n.3 (Fed. Cir. 2012) ("Where the Board applies a legal standard that governs its holding, the propriety of that standard is properly before us on appeal.").

Liquidia tries to color UTC's "3 pages" of argument as insufficient. RB50. This is a bizarre argument given that Liquidia addressed each dependent dry powder claim with only a *single sentence* without addressing reasonable expectation of success for these claims in any way. *See* BB22, 66. UTC not only argued that Liquidia's "conclusory evidence" was insufficient, Appx0401, but offered evidence detailing why, *e.g.*, "a POSA would be unable to formulate a treprostinil powder suitable for

administration via a dry powder inhaler for PH patients." Appx0400 (citing Appx5940-Appx5966).

Liquidia also argues waiver concerning the Board's "fail[ure] to consider 'all of the limitations of the dry-powder dependent claims.'" RB51. UTC cannot waive arguments about errors that first surfaced in the Board's Final Written Decision. *See, e.g., Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1325 n.8 (Fed. Cir. 2020) (concluding that "a party cannot waive objection to a court's failure to apply the correct legal standard to the question presented."). And UTC separately addressed the dry powder dependent claims by arguing that a POSA would have to engage in "excessive" experimentation to develop a "treprostinil powder formulation and corresponding dry powder inhaler that achieve effective administration as required by claims 1, 4, 6, and 7 of the '793 patent." Appx0400.

Liquidia repeatedly suggests that UTC solely took issue with Dr. Gonda's "credibility." RB(iii), 2, 21, 50-53. UTC never questioned Dr. Gonda's "credibility." Rather, UTC argued that Dr. Gonda's testimony in a related co-pending proceeding destroys any reasonable expectation of success. The Board *refused to consider* this record evidence solely

because it was offered in the context of enablement rather than obviousness. Appx0032-Appx0033. This was reversible error.

Liquidia says that UTC did not make additional arguments "in its Sur-Reply," but that is irrelevant for two reasons. First, Liquidia did not offer any rebuttal arguments or evidence in its reply. Second, UTC already submitted evidence available—unimpeached and uncontested sworn statements from Liquidia's own expert that "a POSA would be unable to formulate a treprostinil powder suitable for administration via a dry powder inhaler for PH patients[,]" as required by the claims. Appx5951. Liquidia's attempt to convert UTC's extensive record evidence into something other than "affirmative evidence" should be rejected. RB51.

## B. The Board legally erred and Liquidia's response confirms it.

UTC's opening brief detailed the Board's fundamental legal errors in assessing the non-obviousness of the dependent dry powder claims: (1) failing to assess all of the referenced limitations of the dry-powder dependent claims (BB51-53); (2) failing to treat the independent claims as separate inventions (*id.*); (3) failing to consider the appropriate scope of the claimed invention in evaluating the reasonable expectation of

success (BB52); (4) failing to determine the scope and content of the prior art (BB56-57); (5) failing to ascertain the differences between the prior art and the claims at issue (*id.*); (6) reliance on Dr. Gonda's conclusory statement directed to the '212 patent instead of the challenged '793 patent (BB53-55); and (7) reliance on publications (*Atkins* and *Stein*) not asserted as grounds for unpatentability (BB54). Each error independently warrants reversal. These errors flout statutory mandates and run afoul of this Court's binding precedent. BB51-52. And Liquidia offers no substantive response to most of these arguments beyond the "waiver" arguments addressed above.

**First**, Liquidia argues that "the Board did analyze the dry powder claims separately." RB54; *see also* RB58-59. But the Board never mentioned, much less provided a reasoned analysis, for why a reasonable expectation of success exists for delivering a therapeutically effective single event dose of 15-90 µg of treprostinil in 1-3 breaths via dry powder inhaler as the claims require. The law requires no less. BB51-52.

Reliance on *solution* prior art (JESC and JAHA) to teach "the *doses* of '793 patent claim 1" for the dependent *dry powder* claims lays bare the Board's error. RB55 (emphasis added). The Board explicitly rejected

31

Liquidia's use of the '212 patent to calculate claimed doses of dry powder. BB57 (citing Appx0015). The Board never further analyzed the dependent claims combined with the dosing and delivery limitations of their parent claims. Thus, the Board expressly noted a hole in the evidence, and never even tried to fill it. It certainly did not assess whether a POSA would expect solution dosing to be equivalent to dry powder dosing, and the only record evidence is that dry powder delivery would be "completely different" than solution delivery. Appx5953.

Liquidia argues that "there was no issue that the Board needed to address beyond the obviousness of the specific powder formulation aspects of these claims." RB55. This extraordinary argument attempts to negate 35 U.S.C. § 112's mandate that a dependent claim "*shall* be construed to incorporate by reference *all the limitations* of the claim to which it refers" (emphasis added) and this Court's "well settled" precedent that "each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed. Cir. 1985) (*citing* 35 U.S.C. §§ 282, 288; *Leeds & Catlin Co. v. Victor Talking Mach. Co.*, 213 U.S. 301, 319 (1909)). Here, the Board erred by simply looking

at whether the limitations of the dependent dry powder claims were obvious in isolation, without considering them in combination with their parent claim limitations. BB51-56.

**Second**, Liquidia argues that the dosing of claim 1, and therefore claims 4, 6, and 7, "has always come from JESC and JAHA" (RB57)—but both only disclose dosing and delivery of *solutions*. Neither provides a POSA any guidance on how to achieve a therapeutically effective single event dose of 15-90 µg of treprostinil dry powder via dry powder inhaler in 1-3 breaths. Liquidia cannot justify the Board's erroneous application of solution dosing/delivery and breath count references (JESC and JAHA) directly to the dry powder invention without first analyzing the "differences between the prior art" and the '793 patent's dependent dry powder claims as required by *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). RB56. Had the Board completed this foundational step of obviousness analysis, its decision would have concluded that the dry powder claims were non-obvious.

Liquidia argues that "the '212 patent's disclosures and claims bridge the gap from liquid to powder formulation for obviousness purposes." RB57. Yet the Board expressly disagreed. Appx0014-

Appx0015.  The '212 patent does not disclose *any* dosing/delivery that could bridge this admitted technical "gap."  Moreover, Dr. Gonda testified—after considering the '212 patent—that "no treprostinil powder formulation suitable for delivery using a dry powder inhaler had been developed or disclosed as of May 15, 2006."  Appx5949.  Again, Liquidia has no response to this unrebutted testimony from its own expert.  *See* BB68.

While Liquidia's '212 patent stance is long on attorney argument, it is short on citations to the Board's decision.  RB56-58.  As the Board noted, UTC agreed only that "the '212 patent enables its own claims."  App0033.  And the claims of the '212 patent are silent on dry powder dosing/delivery (and therefore could not obviate those limitations of the '793 patent's dry powder claims):

> '[a] method for treating pulmonary hypertension in a mammal comprising delivering to said mammal an effective amount of [treprostinil] or its pharmaceutically acceptable salt or ester by inhalation,' wherein the treprostinil 'is inhaled in powder form comprising particles less than 10 micrometers in diameter.'

Appx0033 (quoting '212 patent claims 6 (14:9-12) and 9 (14:19-21)).  Thus the '212 patent is insufficient to close the gap between alleged prior art

and the '793 patent's requirement for delivery of a 15-90 μg dose of treprostinil dry powder via dry powder inhaler in 1-3 breaths.

The differences are especially meaningful when it is undisputed that the '212 patent describes administration of solution via tracheostomy tube insertion in sheep which allowed for "direct aerosolization of substances into the lung." BB11-12; Appx5013 (129:3-19). The Board understood the constraints of the '212 patent and merely concluded that it "presumably" would have rendered a POSA more likely to expect success in achieving the "similar invention of claims 4, 6, and 7 of the '793 patent." Appx0033. This is a far cry from finding a POSA would have a reasonable expectation of success in achieving all limitations of the '793 patent's dependent claims including the dosing, delivery, and breath count limitations with a dry powder inhaler.

###   C.   The Board's dry powder reasonable expectation of success decision is unsupported by substantial evidence.

Liquidia also has little to say in response to UTC's substantial evidence arguments. Had the Board considered the "record as a whole" and accounted for evidence that "detracts from [the] agency's decision" as

it must, no reasonable fact finder could conclude that the Board's analysis is supported by substantial evidence. *TQ Delta*, 942 F.3d at 1358.

Liquidia's rejoinder, putting aside its waiver arguments, rests entirely on the Board "separat[ing] the two Gonda declarations" because enablement and obviousness are "distinct inquiries." RB60. Yet a POSA's understanding of the relevant facts relating to the state of dry powder treprostinil art does not change just because in one instance they are cited with regard to "enablement" and in another instance to "obviousness"—and especially not when those facts are testified to by the same person. The Board erred when it failed to consider and analyze the facts as set forth by Dr. Gonda that detract from its decision.

Liquidia's remaining arguments are no more persuasive. Liquidia lobs a red herring about requiring the combination of dry powder elements to be found somewhere—anywhere—in the prior art as "requir[ing] the '212 patent to *anticipate*." RB61. Not so. Liquidia simply needed to prove that a person of skill in the art would have a reasonable expectation of success in combining *solution* dosing, delivery, and breath count prior art teachings with a *dry powder* formulation and *dry powder* inhaler. Liquidia never offered such evidence, nor could it as its technical

36

expert, Dr. Gonda, explained in excruciating detail why solution delivery and dry powder delivery are "***completely different***." Appx5952-Appx5953 (Dr. Gonda's emphasis); *see also* Appx6267-Appx6268 (204:14-205:11) (admitting a POSA would have to "invent" and "discover" "techniques that would not have been known"); Appx6227 (43:16-24). The Board's decision is silent on the key issue of why a POSA would expect that a treprostinil dry powder formulation-inhaler combination could deliver 15-90 µg in 1-3 breaths based exclusively on solution teachings. It thus comes as no surprise that the Board's opinion, which implicitly treats solution dosing/delivery prior art as equivalent to dry powder dosing/delivery, is not supported by substantial evidence.

For the dependent dry powder claims, a remand would be futile. Liquidia's conclusory evidence does not amount to substantial evidence and has no nexus to the proper scope of the dry powder inventions. UTC's evidence—*via* Dr. Gonda's sworn statements concerning a POSA's understanding of the dry powder prior art as it relates specifically to the '793 patent's claim limitations as of the priority date—stands unrebutted.

## CONCLUSION

The Court should reverse the Board's decision finding claims 1-8 of the '793 patent unpatentable.

Respectfully submitted,

/s/ *Douglas H. Carsten*
Douglas H. Carsten
Shaun R. Snader
William Jackson
Adam W. Burrowbridge
Arthur P. Dykhuis

*Attorneys for Appellant*
*United Therapeutics Corporation*

Dated: November 2, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for United Therapeutics Corporation certifies that this brief:

(i)     complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 6,995 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2007 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: November 2, 2023        */s/ Douglas H. Carsten*
                               Douglas H. Carsten

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 2, 2023, the foregoing document was filed using the Court's CM/ECF system, which will send notice of such filing to all registered CM/ECF users.


Dated: November 2, 2023         /s/ *Douglas H. Carsten*
                                Douglas H. Carsten